[Crim. No. 138.   First Appellate District.—August 13, 1908.]

THE PEOPLE, Respondent, v. RALPH A. HUNTINGTON, Appellant.

CRIMINAL LAW—CHARGE OF MURDER—VERDICT OF MANSLAUGHTER SUPPORTED—ACQUITTAL OF HIGHER OFFENSE.—Under a charge of murder, though it be a charge of murder in procuring a death by abortion, and evidence tending to show murder, a verdict of manslaughter may be supported. Such verdict constitutes an acquittal of any higher offense; and, notwithstanding the reversal of the judgment for manslaughter upon appeal, the defendant cannot, upon a second trial, be convicted of any other or greater charge than manslaughter.

ID.—EVIDENCE UNDER CHARGE OF MANSLAUGHTER—ABORTION CAUSING DEATH.—On a second trial for manslaughter, the facts of the case may be proved to support a verdict for manslaughter, though they may tend to prove a higher offense; and where a verdict only of manslaughter is claimed on a second trial under a charge of murder in causing death by an abortion, and the court properly instructs the jury upon the supposition that if they believed the facts, they should find a verdict only of manslaughter, in view of

the former verdict of manslaughter, it is not a tenable ground of objection that a charge of murder was proved.

ID.—CHARACTER OF MANSLAUGHTER IMMATERIAL.—It is immaterial whether the manslaughter claimed was voluntary or involuntary. The statute does not distinguish the kinds of manslaughter in prescribing the punishment therefor.

ID.—EVIDENCE—SELF-SERVING DECLARATIONS OF DEFENDANT.—One who intends to perform a criminal act cannot make declarations as to a lawful purpose wholly prior to the act, and introduce the same to justify himself; and the self-serving declarations of the defendant made the day before the offense, when borrowing curetting instruments from another physician, made to such physician, as to his purpose in obtaining them, were properly excluded as inadmissible.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.    W. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Peter F. Dunne, and Robert Ferral, for Appellant.

U. S. Webb, Attorney General, Wm. H. Langdon, District Attorney, and John O'Gara, Assistant District Attorney, for Respondent.

COOPER, P. J.—The information charges the defendant with the crime of murder by the unlawful and felonious killing with malice aforethought of Jennie McKown on the twenty-seventh day of October, 1900, in the city and county of San Francisco.   The case has formerly been before the supreme court.   On the first trial the defendant was convicted of manslaughter, and on appeal the judgment was reversed upon the ground that the court erred in giving an instruction upon the subject of manslaughter, where the whole theory of the prosecution during the trial was that defendant was guilty of murder in causing the death of deceased by an attempt at criminal abortion, no claim being made that death resulted from a lawful act in performing a surgical operation upon deceased without due caution and circumspection.   (*People* v. *Huntington,* 138 Cal. 261, [70 Pac. 284].)   The court there remanded the cause for a new trial.

It is settled by a long line of decisions in this state that the verdict of manslaughter in the first trial and the judgment entered thereon operate as matter of law to acquit the defendant of all higher offenses, to wit, murder in the first degree and murder in the second degree. (*People* v. *Gilmore,* 4 Cal. 376, [60 Am. Dec. 620]; *People* v. *Backus,* 5 Cal. 275; *People* v. *Apgar,* 35 Cal. 391; *People* v. *Smith,* 134 Cal. 453, [66 Pac. 669]; *Huntington* v. *Superior Court,* 5 Cal. App. 288, [90 Pac. 141].)

The cause, after a long delay, came up for a second trial in the superior court in June, 1907, and the jury returned a verdict of manslaughter, upon which judgment was entered, sentencing the defendant to a term of four years in the state prison at San Quentin. Defendant made a motion for a new trial, which was denied, and hence this appeal from the judgment and order.

The main contention of defendant is that the court received evidence which showed, or tended to show, that the death was caused in an attempt to perform a criminal abortion upon deceased, and hence the crime proved was murder and not manslaughter, and that defendant could not be convicted of manslaughter where the evidence shows that the crime was murder in killing deceased by attempting to produce an abortion. It was clearly the theory of the district attorney and of the trial judge that all the facts might be proven, and that upon such facts the jury might return a verdict of manslaughter even though the crime was in fact murder. It is not disputed that such verdict might have been returned if the case had not been tried before, and the defendant, by reason of the law, acquitted of murder. The district attorney in the course of his opening statement said: "From these and a variety of other circumstances we expect to show that this girl was pregnant; that the defendant knew of her pregnancy, and that he undertook to relieve her of that condition, and that, in his attempt to perform the operation he caused her death." And the judge in instructing the jury said: "If you find from the evidence in this case to your satisfaction to a moral certainty and beyond a reasonable doubt, that the defendant Ralph A. Huntington did, on or about the 27th day of October, 1900, at the City and County of San Francisco, knowingly and intentionally perform or attempt to perform the

operation of curettement on Jennie McKown while she was pregnant, for the purpose of causing her a miscarriage, when the same was not necessary to save her life; and that, by reason of such performance or attempt to perform such operation said Jennie McKown lost her life, it will be your duty, in view of the former verdict in this case, to find the said defendant guilty of manslaughter.'' In our opinion the evidence was admissible if it tended to prove the defendant guilty of manslaughter, although it proved more, to wit, the crime of murder. Murder is defined as ''The unlawful killing of a human being with malice aforethought.'' (Pen. Code, sec. 187.) It is divided into degrees as follows: ''All murder which is perpetrated by means of poison, or lying in wait, torture, or any other kind of willful, deliberate, premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree; all other kinds of murder are of the second degree.'' (Sec. 189.) Manslaughter is ''The unlawful killing of a human being without malice.'' (Sec. 192.) If the defendant caused the death of deceased by the use of an instrument or other means with intent to procure a miscarriage, the killing was unlawful, because such act is expressly made a felony by statute. (Pen. Code, sec. 274.) There is ample evidence in the record to sustain the implied finding of the jury to the effect that the death was caused by defendant in an attempt to produce a miscarriage of deceased, who was pregnant. It is not necessary to give such evidence in full, or to discuss the evidence as to the defendant's acquaintance with the unfortunate girl who met her death while in the full bloom of youth and vigor. In fact, counsel for the defendant do not claim that the evidence is insufficient to support a verdict of murder; but they insist that the evidence shows the crime to have been murder, and that the defendant has been already acquitted thereof. This argument is based upon the code, which divides manslaughter into two classes: ''1. Voluntary, upon a sudden quarrel or heat of passion; (2) Involuntary, in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution or circumspection.'' It is not claimed by the people that the killing was done in the performance of a lawful act in an un-

lawful manner, or without due caution or circumspection; nor
is it claimed that it was done in the commission of an unlaw-
ful act not amounting to a felony, for the very reason that if
the defendant was attempting to procure a miscarriage of de-
ceased, who was pregnant, he was doing an unlawful act which
was a felony.    The result of the argument of appellant's coun-
sel, if carried to the extent claimed, would be to hold that if
the act which defendant performed was unlawful but not a
felony, he is guilty of manslaughter; while if the act was a.
felony, he is not guilty of manslaughter, but of murder.    We
do not think it incumbent on the court to give such narrow,.
technical interpretation as to the true meaning of the statute.
If the killing was unlawful with malice aforethought, it was,
murder, and it was also manslaughter, because, by the very
definition of the statute, it was the unlawful killing of a human
being.    It is none the less manslaughter because we cannot
logically place it under one of the headings of section 192 as be-
ing voluntary or involuntary.    If the killing was manslaugh-
ter, it is not important that it be classified.    The statute does
not distinguish the kinds of manslaughter in prescribing the
punishment, but, on the contrary, makes the punishment not
exceeding ten years' imprisonment for manslaughter; and the
question as to whether any case falls under the one head or
the other does not appear to be material.    It is not necessary
for us to pause in this case and reverse the judgment of con-
viction because we might not be able to classify the man-
slaughter as being voluntary or involuntary.    The main ques-
tion is whether or not the evidence shows the defendant to be
guilty of manslaughter.    The evidence is sufficient to justify
the verdict that the deceased came to her death by the un-
lawful act of the defendant.    The law only requires that the
acts claimed to constitute the crime should come within the
prohibition of the statute when interpreted by the plain rules.
of common sense.    We have been cited to no case which is in
conflict with what we have said.    It is said in McClain on
Criminal Law, section 335, after speaking of the classifica-
tion of manslaughter into voluntary and involuntary: ''All
these classes are characterized on the one hand by the pres-
ence of some wrong, and on the other by the absence of malice
aforethought, so that a short definition of manslaughter would
be, criminal homicide without malice aforethought.    This dis-

tinction is sometimes embodied in statutes, in which case it is necessary to refer to the common law to determine what killings are and what are not within the statute. Manslaughter is not a degree of murder, but a distinct crime, included, however, in the crime of murder." The same author says further (sec. 347) : "The cases of manslaughter already discussed are those where the killing is intentional, but under such provocation as to indicate the absence of malice, and reduce the offense to manslaughter. But there are also cases of unintentional homicide amounting to manslaughter, just as there are cases of unintentional homicide amounting to murder, the difference being as to the magnitude of the wrong which was intended and from which death has resulted. Thus if a wrongful blow is given resulting in death, the act will not be less than manslaughter, even though the blow was one in its nature not likely to cause death or otherwise shown to have been inflicted with intent to cause death. Death resulting from an act wrongful *per se,* such as attempting to procure an abortion when not necessary to save the life of the woman, will be manslaughter at least."

In speaking of the various definitions of manslaughter, and the various criticisms thereof, it is said by Bishop in his New Criminal Law, volume 2, section 737 : "Though the subject does not admit of a definition so exact and short as to satisfy equally the demands of the law and of literary taste, the following is proposed : Manslaughter is any such dangerous act or omission feloniously done or suffered contrary to one's legal duty as results in the death of a human being within a year and a day. Now this definition includes murder, and properly, because an indictment for manslaughter may be sustained while the proof is of murder."

It is said in Wharton on Homicide, third edition, section 92 : "So it is open to the jury to ignore the doctrine of implied malice in such case, and a verdict of manslaughter may be properly rendered in a prosecution for a killing done in the perpetration or attempted perpetration of a felony."

And again (sec. 376) : "At common law if life was destroyed in the commission of or attempt to commit an abortion, whether the woman was quick with child or not, it was murder, or at least manslaughter." And section 378 : "By

statute in Illinois, and perhaps in some of the other states, it is expressly provided that if any person shall, in the attempt to procure the miscarriage of a pregnant woman, thereby cause her death, the person so offending shall be deemed guilty of murder, and shall be punished as the law requires for such offense. Such a statute brings the crime under the general rule which governs and controls murder committed by other means; and in such case a verdict of manslaughter may be found by the jury as well as in a case of prosecution for murder of any other kind.''

In *People* v. *Commonwealth*, 87 Ky. 487, [9 S. W. 512], one of the leading cases—the defendant was convicted of manslaughter, where death resulted in the use of means to procure an abortion, and the verdict was upheld. The court said: ''All the authorities agree that if, from the means used, the death of the woman results, it is either murder or manslaughter.''

In *State* v. *Alcorn*, 7 Idaho, 599, [97 Am. St. Rep. 252, 64 Pac. 1014], the defendant was tried upon an indictment charging murder and found guilty of manslaughter, and the judgment was affirmed, the court holding that the contention of defendant that because the indictment charged murder, the verdict of manslaughter could not be upheld was without merit.

In *Earl* v. *People*, 73 Ill. 329, the defendant was prosecuted on an indictment for murder, under a statute which provided that any person who causes the death of a pregnant woman in an attempt to produce an abortion shall be deemed guilty of murder. A verdict of manslaughter was returned, and the court upheld it; and also held that the trial in such case should be conducted as an ordinary trial for murder. The remarks of the court are applicable to this case, and are as follows: ''By the express provision of the statute the crime for which the plaintiff in error was indicted is declared to be murder. Unless there is some provision in the law which would take the crime of murder caused by an abortion, out of the application of the general rule which governs and controls the same crime produced in another manner, then the rules of law which apply to and govern ordinary cases of murder must be held to control the case at bar. The Act declares

the attempt to produce the miscarriage of a pregnant woman, which causes the death of such woman, shall be murder, and the penalty for the crime is the same as if murder had been committed in a different manner. An indictment is required as in other cases. The trial is conducted in all respects as is required where a criminal is on trial for murder caused by killing in some other manner; and in the absence of a law prohibiting a verdict of manslaughter we are aware of no reason why a verdict of that character may not be found by a jury as well in a case of this character as under any other indictment for murder.''

This case was upheld and followed in the later case of *Howard* v. *People*, 185 Ill. 552, [57 N. E. 441], and the court held that ''The lesser crime manslaughter is included in the greater, murder.''

The subject is very fully discussed and the cases cited in a note to *State* v. *Power* (Wash.), 63 L. R. A. 902. The author of the note concludes by stating that, while causing the death of a woman by procuring, or attempting to procure, her miscarriage was usually regarded as murder at common law, yet under statutes classifying homicide ''it is usually regarded as either murder or manslaughter.''

It is needless to quote further from authorities. The above are directly in point to the effect that, under a charge of murder by attempting to procure an abortion, a verdict of manslaughter may be returned and will be upheld. Our own courts have in principle decided the same way, and it has always been held that under an ordinary indictment or information for murder the defendant could be convicted of the lesser offense manslaughter. (*People* v. *Muhlner*, 115 Cal. 303, [47 Pac. 128]; *People* v. *McFarlane*, 138 Cal. 481, 490, [71 Pac. 568, 72 Pac. 48].) In the latter case it is said: ''But inasmuch as the offense of manslaughter is necessarily involved in the offense of murder we cannot see that the defendant was prejudiced by instructions defining the latter crime, and in telling the jury that if the evidence warranted a conviction of murder they should find the defendant guilty of manslaughter; and could not, in view of the plea of former conviction, find him guilty of murder. The facts on which the information charging murder was based did not change when,

by reason of the former conviction for the lesser offense, the defendant was acquitted of the greater. At the second trial the same evidence would go to the jury whether it pointed to murder or only to manslaughter (Pen. Code, sec. 1180), and this same evidence would have gone to the jury had the information charged manslaughter instead of murder. In effect the instruction was that, although the jury might regard the evidence as establishing the crime of murder as defined by the court, the jury must render a verdict of guilty of manslaughter only. Clearly if murder was made out, so necessarily also was manslaughter."

While there are expressions in *People* v. *Huntington,* 138 Cal. 261, [70 Pac. 284], giving countenance to defendant's contention, a careful examination of the case will show that it does not conflict with what has here been said. Not only is this so, but the case was remanded for a new trial. The court knew that the result of the verdict of manslaughter was to acquit the defendant of murder; and it could only remand the cause for a new trial for manslaughter. The new trial was for manslaughter, and the verdict was guilty of manslaughter. And so of *Huntington* v. *Superior Court,* 5 Cal. App. 288, [90 Pac. 141]. The question there was as to whether or not the defendant could again be tried for murder; and it was held that he could not. It was there said: "A man should not be tried for one crime and found guilty of another and different crime, unless the different crime is included in the charge for which he is being legally tried. Now in the charge of murder is included the lesser offense of manslaughter; and in a proper case, where the defendant is being tried for the crime of murder a jury may find the lesser offense of manslaughter."

It being conceded that the people had the right to put the defendant on trial for manslaughter, it must follow that evidence as to the death, the time and place thereof, and the circumstances, and defendant's acts in connection therewith, was admissible. If this were not so, we would have the strange case of the people having the right to try the defendant for manslaughter, but being deprived of the right to prove such crime. Such is not the law.

The defendant claimed that the operation which was performed by him upon the deceased was the lawful operation of curettement, performed by instrumental treatment of the inner womb for the removal of a condition therein of endometritis; that he was not in any way attempting to produce an abortion. He called one Dr. Depuy as a witness, and proposed to prove by such witness that he borrowed a curette, dilator and irrigator with which to perform the operation; and that he, the defendant, made the contemporaneous statement to Dr. Depuy that he wanted such instruments for the purpose of performing such operation upon deceased. After objections had been made to this line of questions as to such declarations, the record shows the following to have occurred while the attorney for the defendant was explaining what he desired to prove:

"Mr. Dunne: One day before the operation—if the operation was upon the 27th, that it was upon the 26th that Dr. Huntington obtained the instruments, made the declaration to this doctor as to his purpose in obtaining them, and inviting him to be present at the operation.

"The Court: Has proof been offered that the instrument was used—the curette?

"Mr. Dunne: If it has not been offered in the case it will be offered. That is a mere question of the order of proof (argument).

"The Court: The objection will be sustained at this time without prejudice to the renewal of the offer."

"Mr. Dunne: We note an exception."

The objection which had been interposed to this line of questions leading up to the offer was that the declarations were incompetent, irrelevant and immaterial and hearsay; that no proper foundation had been laid. It is evident from an examination of the record that no question was asked of the witness as to the mere fact of the defendant having borrowed the instruments from him; but the questions were each accompanied by the question as to the statement or declaration of the defendant made to Dr. Depuy at the time he desired to borrow or procure the instruments. The statements made by defendant to Dr. Depuy the day before the attempted operation as to the purpose for which he desired them, would

be clearly self-serving declarations. It was not a declaration forming part of the transaction and made while it was in progress. The law would not permit a party who intended to perform an act that was criminal to make statements or declarations a day or two before the act as to the lawful purpose in mind, and then introduce such declarations to justify himself. Not only this, but the court placed its ruling upon the ground that there had been no proof offered as to the use of the curette, and sustained the objection, with leave to renew the offer. Defendant's counsel never renewed the offer.

Defendant testified in his own behalf that he performed the operation for endometritis and used curettes; that he procured a curette from Dr. Depuy.

We find no ruling prejudicial to the defendant. He appears to have had a fair trial, and the jury passed upon the question of his guilt. It is our province to pass upon questions of law where there is sufficient evidence to justify the verdict. There being no error in the record the judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 12, 1908.