[Crim. No. 1819. Third Dist. Apr. 30, 1943.]

THE PEOPLE, Respondent, v. ANTONIO URRUTIA, Appellant.

George E. Foote for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

PEEK, J.—The defendant was charged with the crime of assault with a deadly weapon with the intent to commit murder. There were two trials; at the first, the jury, being unable to reach a verdict, was dismissed; at the second, the defendant was convicted of the crime of assault with a deadly weapon. His motion for a new trial was denied and he was sentenced to the state penitentiary. He now appeals to this court both from the order denying the motion and from the judgment, particularly citing as error the insufficiency of the evidence to support the judgment and the action of the trial court in permitting certain questions and answers.

Jose Guitterez, the victim of the assault, was a farm labor contractor, and had been so engaged for a number of years.

Shortly after the hour of eleven o'clock on the evening of Sunday, August 16, he visited a saloon named Neocha da Rhomba, in the city of Sacramento, for the purpose of assembling his laborers. His testimony was to the effect that as he entered the saloon he felt someone put a hand on his hip pocket; that he quickly turned and saw the defendant; that he grabbed the defendant and struck him, knocking him to the floor; that while he was thus engaged an unidentified man struck him from behind, cutting his back; that he turned to face his rear attacker; that then the defendant stood up on one knee and "cut him in the stomach"; that he was taken to the hospital and remained there for nine days.

The barkeeper testified substantially to the same effect, and that he saw the defendant partially arise from the floor on one knee and "cut" Guitterez "in the front."

Another witness testified that he saw substantially the same events and that he saw defendant "cut" Guitterez "with a knife."

A policeman who was called to the scene found Guitterez "cut pretty badly."

The owner of the La Favorita saloon, located near the scene of the assault, testified that the defendant, with a companion, was in her place of business shortly before eleven o'clock on the evening in question; that he acted in a noisy and belligerent manner arguing with another customer; that he had a knife in his hand, which she told him to put away.

Dr. Frank L. Russell, the attending physician, testified that he examined the victim at the County Hospital; that he observed "two bad lacerations on his body, apparently made with some sharp instrument"; that "from the appearance of the wound a sharp instrument of some sort was used to make the cut," and that it was possible a knife was used. Dr. Russell further testified that the wound in front was approximately twelve inches long; it passed underneath the skin and through the muscle; that it did not penetrate the abdominal cavity; that a person so cut would hemorrhage considerably and a considerable quantity of blood would be lost.

The defendant categorically denied most of the evidence of the people's witnesses, and rested his case on such denials.

The defendant maintains that since no weapon was found nor introduced in evidence there is no proof that the wounds were inflicted by a deadly weapon. That "the only evidence as to the character of the weapon is found in the

nature of the wound" according to the testimony of the attending physician.

It is true the record does contain other testimony contradictory to that which has been mentioned. The effect, therefore, of such contradiction was to present a conflict on such question to the jury for its determination as the sole judge of the value thereof, and as a result of its deliberations it decided against the defendant.

To substantiate his contention appellant cites but two cases, *People* v. *Stevens*, 15 Cal.App. 294 [114 P. 800], and *People* v. *Valliere*, 123 Cal. 576, 577 [56 P. 433]. In neither case is support found for such contention. In fact in the first case cited we find the following statement: "That a deadly weapon was employed is established by the physician's testimony . . . ; that they [the wounds] were of such character as might have been caused by the use of a sharp instrument and were so located that death might have ensued." Likewise, in the second case, the court stated: "The testimony of Dr. Gates would seem to show that whether the instrument used was such as would likely produce death depends upon the manner of its use and the portion of the body upon which it was used, and therefore it becomes a mixed question of law and fact which the jury must determine. . . ."

In the present case several witnesses testified that the defendant either "cut" the victim or "cut him with a knife" or that the cut was apparently made with a "sharp instrument."

Section 245 of the Penal Code does not define a "deadly weapon" but this court previously has stated in the case of *People* v. *Caberera*, 104 Cal.App. 414, 415 [286 P. 176], that "it is a matter of common knowledge that a knife, when used as an instrument with which to stab or cut a human being, is a deadly weapon." The court also held in the same case there was no error in failing to instruct the jury as to what constituted a deadly weapon.

The testimony of the witness and the corroborating witnesses positively establishes the fact of the assault. The nature of the wound together with the direct testimony was sufficient to prove that the assault was committed with a deadly weapon, even if there had been no direct testimony that a knife was seen in the hand of the defendant. *People* v. *Guiterrez*, 140 Cal.App. 720 [35 P.2d 1046].

In view of this testimony and the determination by the

jury of the questions of fact so presented we cannot say as a matter of law that its conclusion was wrong or that the verdict was not justified by the evidence.

■ The appellant further contends that the main convincing evidence again him was elicited by ''repeated leading questions'' and thus he was ''prevented from having a fair and impartial trial.'' As illustrative of the objectionable questions and answers he cites a part of the testimony of Guitterez, which we have quoted in full, as follows:

''A. I felt there that somebody touched my pocket, my hip pocket.

Mr. Lavelle: Q. That is, your left pocket?

Mr. Foote: Just a minute, I would ask that the reporter read that answer. (Reporter reads answer last given.)

Mr. Foote: I would suggest that the district attorney don't put words in the witness's mouth. He is saying he put his hands in that pocket.

The Court: Objection overruled—it was the left hip pocket?

A. Yes sir, hip pocket.''

The defendant amplifies his complaint by the statement that ''there were many such questions and answers,'' although he fails to direct our attention to such other alleged errors, nor has defendant shown how, if at all, he was thereby prevented from having a fair and impartial trial. In view of such a meager showing this court cannot, as a matter of law, say that such questions and answers present error sufficient to justify a reversal of the judgment of the trial court. A showing decidedly more substantial than is presented on this appeal is an obvious necessity.

Without delving at length into the innumerable citations upon the problem of leading questions and answers suffice it to say that the examination of a witness in the trial of a case or the manner of such examination, particularly as to the form of the question, is a matter committed to the sound discretion of the trial court, which must determine whether or not leading questions should be allowed in the examination of a particular witness from all of the circumstances present and under its immediate observation. It is only where it clearly appears that the court has abused its discretion in the allowance of questions, either leading or suggestive, in the form in which they are propounded that this court would be authorized to disturb the verdict. Particularly is this true with witnesses unfamiliar with the English language. (*People*

v. *Gregory,* 8 Cal.App. 738 [97 P. 912]; *People* v. *Clary,* 72 Cal. 59 [13 P. 77]; 27 Cal.Jur. p. 80.)

In the present case we have testimony produced almost entirely through the medium of an interpreter.

 Lastly, defendant contends that the witnesses for the prosecution were impeached in many instances, and that "without pointing out these matters in detail we ask the court to consider the record carefully and we feel certain that a reasonable doubt as to defendant's guilt will be raised in the minds of the court." We have heeded defendant's suggestion and have considered the record carefully. Viewing the record and the evidence contained therein in a light most favorable to defendant we find nothing more than a simple conflict in the evidence, something far short of impeachment. "A witness is presumed to speak the truth. . . the jury are the exclusive judges of his credibility," (Code Civ. Proc. 1847) and "are the judges of the effect or value of the evidence addressed to them, . . . and when the evidence is contradictory . . . , guilt must be established beyond reasonable doubt." (Code Civ. Proc. 2061.)

We therefore find no merit in the contentions of defendant. The jury saw the witnesses and heard their testimony. The question of reasonable doubt is not for this court to decide. The jury by its verdict resolved that question against the defendant.

The judgment and order are affirmed.

Thompson, J., and Adams, P. J., concurred.