[Crim. No. 4244.   Second Dist., Div. Three.   Sept. 1, 1948.]

THE PEOPLE, Respondent, v. CURTIS SIMPSON, Appellant.

J. Q. Gilchrist for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufman, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was charged in count I of an information with the crime of assault with a deadly weapon upon Hugh N. Wiley, and in count II thereof with the crime of assault with a deadly weapon upon Equilla D. Williams.

The jury found defendant guilty as charged in count I and not guilty as charged in count II. Defendant appeals from the judgment and from the order denying his motion for a new trial.

. Appellant contends that the verdict of not guilty on count II is so inconsistent with the verdict of guilty on count I that it constitutes an acquittal of the offense charged in count I; and that the court erroneously instructed the jury in respect to the existence of certain facts.

■ The crimes charged were allegedly committed during an altercation which occurred after an automobile collision. On January 1, 1948, Wiley, his wife, and one Robinson, had been visiting Wiley's sister, Equilla D. Williams. There was testimony on behalf of the prosecution to the effect that about 2 p. m. on that date, Wiley left his sister's house, entered his automobile, which was parked parallel to the curb in front of the sister's house, and started to drive away; that his wife came out of the house and objected to his driving the automobile; that Wiley then stopped the automobile in such a position that the right front portion of the automobile was about 1½ feet from the curb, and the right rear portion was close to the curb; that his wife then entered the automobile and then they sat in the automobile and talked; that defendant, who was proceeding in his automobile in the same direction that the Wiley automobile was facing, passed the Wiley automobile and struck the front bumper of it with his right rear fender; that an argument arose regarding the collision, and Miss Williams told Wiley to go into the house; that as Wiley started toward the house the defendant opened the front door of his automobile, removed the keys from the ignition lock, went to the rear of his automobile, and unlocked and opened the door of the trunk; that he then took the bumper jack from inside the trunk, and, while holding it over his shoulder with both hands, rushed toward Wiley; that Miss Williams called to Wiley to watch out, and she ran between him and defendant; that defendant swung the jack toward Wiley, and Wiley put up his right hand to catch the jack; that the jack struck and broke his hand; that it also struck and cut Miss Williams on the forehead; that a scuffle ensued in which the defendant Simpson, Wiley, Robinson, and two men who had been passengers in defendant's automobile participated; and that during the scuffle the jack was taken away from defendant. Wiley testi-

fied that defendant first hit Miss Williams with the jack, and that he then raised it again and hit the witness Wiley.

There was testimony on behalf of defendant as follows: Defendant and a passenger in his automobile testified that Wiley got the jack from behind the seat of his (Wiley's) automobile; that defendant grabbed hold of it and began to tussle with Wiley; that the passenger and Robinson then joined in and the four of them had hold of the jack and were scuffling over it; that one of the women told someone to go into the house and get a gun; that defendant then released his hold on the jack, ran to his automobile and got into it; and that the passenger gave Wiley a shove, then got into defendant's automobile, and defendant drove away. Another witness, who was a passenger in defendant's automobile, testified that he saw Wiley open the right door of his (Wiley's) automobile, reach inside and take the jack from a shelf back of the seat; and that as soon as Wiley got the jack out of his automobile defendant "grabbed" him, and they started tussling. Another witness, who was also a passenger in defendant's automobile, testified that he saw Wiley start toward his (Wiley's) automobile, and the witness then got out of defendant's automobile, walked to the front of it, and at that time three men were tussling over the jack; that later another man joined in the scuffle; and that defendant quit the scuffle first, and then Wiley "broke loose" and started toward the house.

Appellant (defendant) asserts that all the witnesses for the prosecution, except Wiley, testified that defendant struck only one blow, and that, with the one blow, he struck Wiley and Miss Williams. In support of his contention that the verdicts are so inconsistent as to constitute an acquittal of the offense of which he was found guilty, appellant argues in effect that the verdicts show that the jury believed that only one blow was struck; and, therefore, that if one of the alleged assaults was not committed, the other alleged assault was not committed. As above shown, the evidence is legally sufficient to support the finding that defendant assaulted Wiley. Although there is evidence that would have been legally sufficient to have supported a finding that he also assaulted Miss Williams, there is also evidence from which the jury could have concluded that Miss Williams was not assaulted by defendant, but was injured in the general scuffle in some unascertainable manner. Appellant's contention regarding

inconsistent verdicts is not sustainable. The crime charged in count I was an offense separate from that charged in count II. Appellant cites *People* v. *Andursky,* 75 Cal.App. 16 [241 P. 591], in which the defendant was charged in one count with the commission of a certain crime, and in a second count he was charged with the commission of the same crime, together with other unlawful acts against the same person named in count one. The jury found defendant guilty of the charge in the first count and not guilty of the charge on the second count. It was held therein that the findings were conflicting and inconsistent, since the jury by its verdict of guilty had found that defendant had committed the offense and by its verdict of not guilty had found that defendant had not committed the offense. It does not necessarily follow, however, when two or more offenses are charged as the result of one act that an acquittal as to one of the alleged offenses amounts to a finding that the act was not committed. Furthermore, the Andursky case was decided before section 954 of the Penal Code was amended in 1927. By that amendment the following provision was added to the section: ''A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.'' (See *People* v. *Amick,* 20 Cal.2d 247, 250, 251 [125 P.2d 25].) In the last cited case two persons were killed when a truck which was being driven on the wrong side of the highway collided with another truck proceeding in the opposite direction. The sole contention on appeal was that the verdict acquitting appellant of manslaughter was inconsistent with the verdict of guilty of negligent homicide, since both charges grew out of the same act. The court therein discussed the 1927 amendment to section 954 of the Penal Code and concluded that an acquittal on one count did not result in an acquittal on the other count.

Appellant also contends that a part of a given instruction, defining a deadly weapon, was erroneous. Said part of the instruction is as follows: ''A deadly weapon is any object, instrument or weapon which, used in the manner *in which it appears to have been used,* is capable of producing, and is likely to produce, death or great bodily injury.'' (Italics added.) That instruction is a part of an instruction known as instruction No. 604 of the book of California Jury Instructions, Criminal. The instruction was erroneous under the circumstances of the present case. It assumes as a fact that the jack was *used* in some assaulting manner by the defend-

ant. The question as to whether the defendant used the jack in any manner was one of the controverted issues for the determination of the jury. There was evidence on behalf of the prosecution that defendant Simpson obtained the jack from his own automobile and then with the jack in his hands, holding it above his shoulder, rushed toward Wiley. On behalf of defendant there was evidence that Wiley obtained the jack from his own automobile and that defendant grabbed hold of the jack while Wiley was holding it, and then two other persons also took hold of the jack and a general scuffle ensued over it, and that defendant at no time had or used the jack. The evidence was therefore conflicting as to the manner in which the jack was used or involved in the transaction. It could not properly be concluded as a matter of law that it appeared that the jack was used by defendant in any particular manner. Of course, if the jack was involved only in the manner asserted by the defense witnesses the defendant did not assault anyone. The court, in instructing the jury, should not have implied that it appears that the jack was used by defendant in the manner asserted by the prosecution. " 'The Court should not, directly or indirectly, assume the guilt of the accused [or any fact to be determined by the jury], nor employ equivocal phrases which may leave such an impression.' " (*People* v. *Peterson,* 29 Cal.2d 69, 77 [173 P.2d 11]; and *People* v. *Williams,* 17 Cal. 142, 147.) In *People* v. *Williams,* just cited, the defendant was charged with murder, and the court in giving an instruction on self-defense referred to the decedent as defendant's "victim." The court in that case stated at page 147 : ". . . it is apparent that in a case of conflicting proofs, even an equivocal expression coming from the Judge, may be fatal to the prisoner. When the deceased is referred to as 'a victim,' the impression is naturally created that some unlawful power or dominion had been exerted over his person. . . . The experience of every lawyer shows the readiness with which a jury frequently catch at intimations of the Court, and the great deference which they pay to the opinions and suggestions of the presiding Judge, especially in a closely balanced case, when they can thus shift the responsibility of a decision of the issue from themselves to the Court." (See also *People* v. *Orosco,* 73 Cal.App. 580, 585 [239 P. 82].)

Respondent cites *People* v. *Rodrigo,* 69 Cal. 601 [11 P. 481], and asserts that a similar instruction was given therein

and held to be proper. It appears in that case, however, that the assault was admitted, but the defendant sought to prove that the assault was made in self-defense. In the case of *People* v. *Valliere,* 123 Cal. 576 [56 P. 433], also cited by respondent, the defendant admitted the assault, but argued that the instrument with which the assault was made was not a deadly weapon. In other words, in those cases, there was no controversy as to the manner in which it appeared that the instrument was used.

In the present case, considering the instructions as a whole, it does not appear that the harmful effect of the language used in the above instruction was cured by other instructions.

The judgment and the order denying the motion for a new trial are reversed.

Vallée, J., concurred.

SHINN, P. J.—I concur. The instruction is subject to the further criticism that it misstates the law. The weapon described by the witnesses was an automobile jack. The jury should have been instructed that an automobile jack if used in such a manner that it is likely to produce death or great bodily injury is a deadly weapon. One definition of "appear" is "To seem, to have a certain appearance, to look." Where the weapon is not inherently deadly, the fact that it was used in a manner likely to produce death or great bodily injury, being an element of the offense, must be proved beyond a reasonable doubt. Mere appearances are not sufficient.

A petition for a rehearing was denied September 14, 1948, and respondent's petition for a hearing by the Supreme Court was denied September 30, 1948. Shenk, J., voted for a hearing.