[Crim. No. 931.   Fourth Dist.   May 20, 1953.]

THE PEOPLE, Respondent, v. WILLIAM ARLOW BUTLER, Appellant.

Jefferson & Jefferson, Martha Malone Jefferson and Bernard S. Jefferson for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with arson and in another count with assault with intent to commit murder. A jury found him guilty of arson and, under the other count, guilty of assault with a deadly weapon. He has appealed from the judgment and from an order denying his motion for a new trial.

The defendant had been having some trouble with his wife over a restraining order which had been issued in a divorce proceeding, to which they were parties. He was living in a trailer park near Palm Springs and she was living in the home in Yucaipa. About noon on May 12, 1951, he told two people that he was going to buy a gun and kill his wife. He telephoned his wife three times that afternoon telling her, among other things, that he would burn the house down before he would let her have it. About 4 or 4:30 p. m. on that day he entered a store in San Bernardino and bought a .22 rifle, with a box of cartridges.

About 8:20 that evening Mrs. Butler locked her house and went to a neighbor's. When she returned about 9:50 p. m. she found the defendant sitting in the front room, apparently asleep. She ran back to the neighbor's home and someone there

went to call the constable, who lived a few blocks away. About that time the defendant was seen running away from the house. He got in his parked truck and drove away. He circled around a short distance and again parked his truck, with the lights off, where he could observe the Butler house. About 10 p. m. the constable started for the Butler home and passed the point where the defendant was parked. He stopped and when he started to talk to the defendant he saw a gun barrel sticking over the edge of the door and pointed toward him. The defendant threatened to kill him and fired several shots. After a struggle, the constable succeeded in getting possession of the gun and in handcuffing the defendant, with the help of some other people.

Some 10 minutes after the constable took the defendant away, neighbors observed that the Butler house was on fire. The fire was burning in the front room and in two of the bedrooms, causing damage to the house as well as some of the furnishings. Mrs. Butler discovered that the glass in the rear door had been broken and the screen cut. A forest ranger in charge of a fire suppression station in that district testified as to the conditions he found in the house about 10 :40 p. m. on that night. An investigator for the Board of Fire Underwriters testified as to what he observed three days later.

The sole defense was that of unconsciousness and amnesia. The defendant testified that he took a couple of drinks shortly after noon on that day; that he was unable to remember anything that happened thereafter until later in the evening when he found himself sitting in his truck; that he saw a gun being pointed at him through the window of the truck; and that an officer then hit him. A doctor of philosophy and a doctor of medicine testified that they had questioned the defendant shortly before the trial, and had concluded that he was not conscious of what he was doing during the period in question. The defendant was able to remember what occurred after his struggle with the constable, and testified in some detail as to what was then said and done. The superintendent and medical director of Patton State Hospital testified for the People, and in response to a hypothetical question expressed the opinion that a person who had done what the defendant had done during the intervening period was not unconscious.

No contention is made that the evidence is not sufficient to sustain the verdict but prejudicial error is assigned in connection with the instructions given and in respect to the

admission of certain testimony. Error is first assigned in the giving of an instruction which included the following:

"When the evidence shows that a defendant acted as if he was conscious, the law presumes that he then was conscious. This presumption is disputable, but is controlling on the question of consciousness until overcome by a preponderance of the evidence, which means such evidence as when weighed against the presumption and any evidence supporting the presumption has more convincing force, and from which it results that the greater probability of truth lies therein."

This exact language was held to be erroneous in *People* v. *Hardy,* 33 Cal.2d 52 [198 P.2d 865]. ▆▆ The court there said:

"But there can be no justification in the law for placing on the defendant the burden of overcoming the presumption 'by a preponderance of the evidence.' It is a cardinal rule in criminal cases that the burden rests on the prosecution to prove the offense beyond a reasonable doubt . . . and it is error to deprive an accused of the benefit of the doctrine of reasonable doubt by giving an instruction that he has the burden of proving a defense by a preponderance of the evidence. (Citing cases.) The necessary effect of the instruction given in the present case was to place on defendant not merely the burden of producing evidence which would raise a reasonable doubt as to her consciousness, but the much greater burden of proving unconsciousness by a preponderance of the evidence."

The respondent argues that while this instruction was held to be erroneous in the Hardy case, it was not definitely held to be reversible in itself since other errors there appeared. Other errors also appear in the instant case. In other cases an instruction requiring the defendant to prove his defense by a preponderance of the evidence has been held sufficiently prejudicial to constitute reversible error. (*People* v. *Costello,* 21 Cal.2d 760 [135 P.2d 164]; *People* v. *Marshall,* 59 Cal. 386; *People* v. *Agnew,* 16 Cal.2d 655 [107 P.2d 601].) Moreover, this erroneous statement of the law was given special emphasis in the argument to the jury. Near the end of his closing argument the district attorney stated that the court would instruct the jury that the burden was on the defendant to show by a preponderance of the evidence that he was unconscious, and then said: "I wish you would listen to that instruction very carefully." There was a substantial conflict in the evidence here on this issue, and the effect of this

instruction could not have been other than prejudicial. Regardless of the fact that there was strong evidence of the defendant's guilt, he was entitled to a fair trial under established rules of law.

It is next contended that prejudicial error appears in an instruction given as to the meaning of a deadly weapon. In this instruction the following language was used: "A deadly weapon is an object, instrument or weapon which, used in the manner in which it appears to have been used, is capable of producing, and is likely to produce, death or great bodily injury." In *People* v. *Simpson,* 87 Cal.App.2d 359 [196 P.2d 933], the same language was held to be erroneous since the words "in which it appears to have been used" assumed as a fact that a jack was used in some assaulting manner by the defendant, when there was a conflict in the evidence as to whether it had been so used. The weapon here in question was a rifle, but there was a conflict in the evidence as to whether this was used by the defendant or by the constable. The respondent argues that this instruction was not prejudicial since other instructions left it to the jury to decide whether or not the defendant did commit the assault with this weapon. It could not properly be concluded, as a matter of law, that it appeared from the evidence that this gun was used by the defendant in any particular manner and the court should not have implied that it did so appear. The instruction should not have been given in that form.

It is next contended that prejudicial error was committed in admitting the testimony of the arson investigator for the Board of Fire Underwriters as to his conversation with the defendant at the hospital some days after the fire occurred. This conversation was in the presence of a deputy district attorney and a deputy sheriff. It consisted of a number of accusatory statements by the investigator, all of which were unequivocally denied by the defendant. The defendant was asked such questions as: "Then what did you go up there on Saturday night last and set fire to the place for?" "Do you mean to tell me that you do not remember shooting at a man?" and "You mean to tell me that you didn't set fire to that house," and "You don't remember going into the house of your wife and setting fire to it?" The respondent argues that the testimony as to this conversation comes within the exception noted in *People* v. *Turner,* 86 Cal.App.2d 791 [195 P.2d 809], to the effect that any false statements made by a defendant to arresting officers or others, with relation

to material facts, may be thus shown. It is argued that in his denials to these questions the defendant denied that he was in Yucaipa on that day, and denied that he owned a gun. There was other evidence that the defendant had been in Yucaipa that day and that he bought a gun that afternoon, but he claimed to have been unconscious during that period, and the admission of this evidence cannot be justified under the rule relied on. A flat denial was made by the defendant as to each of the accusatory statements appearing in this testimony, and the evidence thus admitted not only was hearsay but its main effect was to disclose the firm opinion of the investigator that the defendant had set fire to this house and had fired the gun at the constable. This evidence was inadmissible (*People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18] ; *People* v. *Reingold,* 87 Cal.App.2d 382 [197 P.2d 175] ; *People* v. *Spencer,* 78 Cal.App.2d 652 [178 P.2d 520]), and it would naturally have a prejudicial effect on the jury.

It is next contended that the court committed prejudicial error in permitting the cross-examination of the defendant regarding his former plea of guilty. It is conceded that the fact that a defendant had formerly pleaded guilty is admissible as constituting a confession, but it is argued that the usual rules apply with respect to the admission of confessions, and that it was necessary that it be shown that the confession was voluntary in order to make it admissible. This is the usual rule in that regard. (*People* v. *Jones,* 24 Cal.2d 601 [150 P.2d 801] ; *People* v. *Dabb,* 32 Cal.2d 491 [197 P.2d 1] ; *People* v. *Liss,* 35 Cal.2d 570 [219 P.2d 789].) There was no attempt here to show that this former plea had been voluntarily made, and the contrary would appear since the trial court had set aside the former plea in a special proceeding, on the ground that it had not been voluntarily made. The respondent argues that the door had been opened for this evidence since the defendant's counsel had brought out the fact, in another connection, that the defendant had spent seven months in jail. The reason why that time had been spent in jail was not material here, and the cross-examination with respect to the former plea should not have been permitted. Whether or not the matter was sufficiently prejudicial in itself to justify a reversal need not be decided.

The defendant raises 11 other points which require no extended discussion, most of them are either without merit or of so little materiality that they could not have affected the verdict. Three of them relate to and are sufficiently covered

by the matters already discussed. None of them could be held prejudicial under the circumstances here appearing.

Evidence was improperly admitted indicating that the arson investigator was strongly of the opinion that the defendant had set this fire and had shot at the constable. The other evidence concerning the setting of the fire was entirely circumstantial, and concerning the shooting was conflicting. The former plea of guilty could not be taken as a confession here had it been properly presented, and there was no good reason for bringing it in at all. These matters were especially damaging when taken in connection with the instruction that the burden rested on the defendant to prove by a preponderance of the evidence that he was unconscious at the time the acts charged were committed. The jury would naturally be influenced by the improper evidence, and would naturally feel that the defendant, having previously pleaded guilty, had failed to sustain the burden which, according to the instruction, rested upon him. It must be held that these errors were sufficiently prejudicial to require a reversal.

The judgment and order are reversed and the cause remanded for a new trial.

Griffin, J., and Mussell, J., concurred.