[Crim. No. 3428.   First Dist., Div. Two.   July 16, 1958.]

THE PEOPLE, Respondent, v. IRENE DOYLE, Appellant.

John J. Fahey, Jr. and Herbert Chamberlain for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

DOOLING, J.—Appellant was charged with the murder of her husband. The jury found her guilty of voluntary manslaughter. On the night of the killing appellant and her husband were visiting friends. The husband was drinking heavily and refused to go home. Appellant twice attempted to telephone for a taxi and her husband cursed and quarreled with her. Finally about 3 a. m. they did leave for home in a taxi. Appellant testified that both times that she had attempted to telephone for a cab her husband had slapped her and that he continuously struck her about the head on the way home

in the taxi. After they got home her husband continued to strike and shake her. She tried to telephone but her husband continued to strike her. She "grabbed the nearest thing I could reach," which was a 13-inch kitchen knife. Her husband put his hand on hers and kept slapping her and said: "I dare you" and "I'll help you" and he "kept hitting me and hitting me." She further testified that he grabbed her hand and pulled it down. He fell to the floor on his face and appellant tried to turn or stir him. She noticed the knife under him and picked it up, washed it and replaced it in the rack. She then telephoned for an ambulance and the police. The husband was dead on arrival at the hospital. Death was caused by a wound in the groin two inches deep.

Appellant told Officer Samarin who arrived about 3:30 a. m. that her husband had slapped her at the party, in the cab and after they got home and when he threw her cat out that was too much and she picked up the knife to frighten him. He dared her and "I guess I let him have it."

She told Inspector McDonald that her husband had slapped her and thrown her cats out. She took the knife from the rack and when he dared her to stab him, she did.

Appellant makes four points on appeal which we take up in order.

1. *The evidence is insufficient to support the verdict of voluntary manslaughter.*

"Voluntary manslaughter is a wilful act, characterized by the presence of an intent to kill engendered by sufficient provocation and by the absence of premeditation, deliberation and (by presumption of law) malice aforethought. Penal Code, section 192, subdivision 1, defines voluntary manslaughter as the unlawful killing of a human being, without malice 'upon a sudden quarrel or heat of passion.' " (*People v. Bridgehouse,* 47 Cal.2d 406, 413 [303 P.2d 1018].)

Appellant's admissions that "I guess I let him have it" and that her husband dared her to stab him and she did are sufficient to support the jury's implied finding that she had the intent to kill included in the above definition.

2. *The instruction concerning a deadly weapon was prejudicial error.*

As a part of the definition of second degree murder, that it includes the unlawful killing of a human being with malice aforethought in the perpetration or attempt to perpetrate "any other felony," the court instructed that one of such

felonies is the violation of Penal Code, section 245, assault with a deadly weapon. The court defined deadly weapon:

"A deadly weapon is any object, instrument or weapon which, used in the manner in which it appears to have been used, is capable of producing and is likely to produce death or great bodily injury."

Appellant first argues that since the violation of Penal Code, section 245, can be either a felony or a misdemeanor it was error to instruct that it was a felony. However, where an offense may be punished as either a felony or a misdemeanor "the charge stands as a felony for every purpose up to judgment." (*Doble* v. *Superior Court,* 197 Cal. 556, 576-577 [241 P. 852]; *People* v. *Graff,* 144 Cal.App.2d 199, 206 [300 P.2d 837].)

Appellant further complains that the portion of this instruction which reads "which, used in the manner in which it appears to have been used" assumed that appellant used the knife in an assaulting manner when there was a conflict in the evidence on that subject. The identical instruction has been held erroneous where the evidence is conflicting as to whether the defendant "used the weapon in an assaulting manner." (*People* v. *Butler,* 118 Cal.App.2d 16, 20 [257 P.2d 109]; *People* v. *Simpson,* 87 Cal.App.2d 359, 362-364 [196 P.2d 933].) The error was held cured in *People* v. *Laya,* 123 Cal.App.2d 7, 17 [266 P.2d 157], by the addition of the word "if" before the word "used." Such a refinement appears to impute to a jury more astuteness than experience in the trial of jury cases might lead one to expect.

Since the appellant was not found guilty of second degree murder the jury cannot have been misled by the instruction into holding that because a deadly weapon was used the crime must be murder in the second degree. However, appellant argues that because of this instruction the jury was precluded from finding appellant guilty of involuntary manslaughter under the instruction that involuntary manslaughter may consist in "the commission of an unlawful act not amounting to a felony," since the jury had been instructed that assault with a deadly weapon is a felony. The jury was expressly instructed that: "An assault with a deadly weapon is an unlawful attempt coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon." The jury must, to find that this felony had been committed, not only find that the 13-inch knife was a

deadly weapon but also that appellant made an "unlawful attempt . . . to commit a violent injury upon the person" of her husband. If the jury found that the knife was used only defensively or threateningly and that in his struggle with her the decedent accidentally impaled himself without an "attempt" by appellant "to commit a violent injury" on his person, it could not under the instructions find that appellant had committed the felony of assault with a deadly weapon. It must to so find determine not only that the knife was a deadly weapon but also that appellant attempted to commit a violent injury upon her husband's person with it. If appellant did attempt to commit a violent injury upon her husband's person with a knife 13 inches long there could be no question that such a knife so used would be a deadly weapon. (*People* v. *Urrutia,* 58 Cal.App.2d 468, 471 [137 P.2d 48]; *People* v. *Caberera,* 104 Cal.App. 414, 417 [286 P. 176].) We are satisfied that under the instructions as a whole the appellant suffered no prejudice.

3. and 4. *The court committed error as a matter of law in denying the motion to reduce the judgment to involuntary manslaughter and in denying the application for probation.*

The appellant made a timely motion to reduce to involuntary manslaughter and for probation. The latter motion depended on the former since, if appellant voluntarily used the knife in killing her husband, she was not eligible for probation. Under Penal Code, section 1203, a defendant who "used . . . a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted" is ineligible for probation. The record is clear from the statements of the trial judge that he mistakenly believed that he was without power to reweigh the evidence in passing on the motion to reduce to involuntary manslaughter. In reaching this conclusion the trial judge relied upon *People* v. *Sheran* (Cal.App.), 306 P.2d 1057. That case, decided by this court, supported the trial judge's view, but after he had acted in reliance upon it, the Supreme Court, which had granted a hearing therein, definitively held that in passing upon such a motion the trial judge does have the power to reweigh the evidence. (*People* v. *Sheran,* 49 Cal.2d 101 [315 P.2d 5].)

Ordinarily a judgment of voluntary manslaughter is the equivalent of one of involuntary manslaughter since the punishment is the same. (*People* v. *Huntington,* 8 Cal.App. 612, 616 [97 P. 760].) However, the distinction becomes impor-

tant in this case because if voluntary appellant is ineligible to probation for the reason above stated.

The People argue that the appellant in any event suffered no prejudice since the trial judge expressly found that in the commission of the homicide appellant *used* a deadly weapon. In this connection the trial judge stated: "The fact would remain that a deadly weapon was used because it produced a deadly effect." This is a misconception of the law. "The fact that the fatal wound was inflicted by a deadly weapon does not compel the conclusion, as a matter of law, that defendant was 'using' the weapon and was therefore ineligible for probation." (*People* v. *Southack,* 39 Cal.2d 578, 591 [248 P.2d 12]; *People* v. *Johnson,* 140 Cal.App.2d 613 [295 P.2d 493].)

Appellant is entitled to have the trial judge reweigh the evidence in passing upon her motion to reduce to involuntary manslaughter and if the judge after so doing grants the motion, then to entertain her application for probation.

The judgment is reversed for the sole purpose of affording appellant the opportunity to present again to the trial court her motion to reduce the judgment and her application for probation, with directions to the trial court to act thereon in accordance with this opinion.

Draper, J., concurred.

KAUFMAN, P. J.—I concur but in so doing I wish to make it clear that the trial judge has a discretion to grant or deny probation in passing on the motion of appellant.