[Crim. No. 7960. Second Dist., Div. Two. Mar. 1, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. KENNETH WILBERT SWANSBORO, JR., Defendant and Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Ralph F. Bagley, Deputy District Attorneys, for Plaintiff and Appellant.

Douglas H. Trowbridge for Defendant and Respondent.

ASHBURN, J.—Defendant was charged in Count I of an information with violation of Penal Code section 217, assault with a deadly weapon with intent to commit murder, and in Count II thereof with violation of Penal Code section 245, assault with a deadly weapon.

On motion of defendant, Count I was dismissed, the People making no objection to this dismissal. Defendant's motion,

made pursuant to Penal Code section 995, was granted as to Count II and the People appeal from the order.

The evidence before the committing magistrate consists of the testimony of police Officers Willick and Ashe and People's Exhibit 1, a butcher knife. Officers Willick and Ashe, in response to a radio call regarding a disturbance, went in separate patrol cars to 3817 West 104th Street, Inglewood, arriving about 2 a. m. on July 15, 1961. On arrival they found Officer Donniker standing at the front door. Just inside the open door, but with the screen door locked, was the defendant. He had a large butcher-type knife in his left hand ''pointing to the lower left portion of his body just below the rib cage.'' The knife had an 8-inch blade and a brown plastic handle. Defendant made statements to the effect that he was going to kill himself if the officers entered. He also stated that he had a revolver and a pistol in the house and that he was going to get these guns and come out shooting. The officers told him they had no intention of shooting him, that they just wanted him to put the knife down and talk to them. He said he had eight bullets in the gun and was going to come out shooting; he said he knew that if he killed an officer they would have to kill him. Officer Willick testified that ''At 2:25 a. m., we had been there approximately 25 minutes, he told us that in five minutes we had to make up our minds, because he was going to get a gun. And at 2:30, which was five minutes later, he left the front door.''

When defendant left the front door, the officer cut the screen but did not go in. Defendant heard the noise and came back, repeating the threat to kill himself if the officers entered. At this time defendant was ''just out of sight, just around the door.''

Officer Willick entered with Officer Ashe right behind. He saw defendant running through the kitchen into a hallway, from which he turned left into another hallway where Officer Willick found him attempting to enter a closet door. Defendant had told the officers several times at the front door that his guns were in the closet. Defendant had partially opened the closet door but Willick threw his body against the door and grabbed at defendant, who still had the knife in his hand, holding it in the same grip as when he was at the front door. He raised the knife and pointed it at Officer Willick; the blade was protruding from the palm of his hand and his hand was raised to about the height of the officer's head. The instant defendant raised the knife, the officer grabbed the

blade with his hand; "the sharp point was toward the palm of my hand. I grabbed it and held on." As he did so, Officer Ashe reached over Officer Willick's shoulder and grabbed the knife higher upon the blade, near the handle. Defendant was subdued and handcuffed. A search of the closet disclosed a baseball bat, no guns.

Upon cross-examination, Officer Willick testified that defendant's threats against the officers were prior to their entry into the house, and as they entered his threats became very violent; that he was going to kill them because he knew if he killed one of the officers he would have to kill himself.

Officer Ashe testified that while the officers were outside the house, defendant kept making threats with the knife "which was held in his left hand pointing toward his stomach, stating that he was going to kill himself if we entered the house. He stated that he and his wife had been having trouble and he didn't want to live. Other statements that he made were that he wanted to die, and he was going to get some guns that he had in the house, and he was going to come out shooting. He requested us all to line up so he could shoot us, and if we were any kind or any type of a man that we would shoot him in return." The defendant asked Ashe if he was fast on the draw of a gun. "And he said that he had a gun; that if I was any type of a man that we would go out into the driveway and we would draw the guns, and that he was faster than I was and that he would kill me." Officer Ashe did not remember any threats being made while or after entering the house. As he followed Officer Willick into the house and into the hall he saw the defendant and Officer Willick "in a close position." At that time he saw a knife blade "pointed toward Officer Willick's chest and the defendant started a motion downward. . . . And I grabbed for the knife and pulled it out. There was pressure on the knife indicating that there was a hand or hands on the knife. I pulled the knife out of this grip, and it fell to the floor." Officer Willick's hand was nicked; Officer Ashe received many lacerations on his hand requiring medical attention.

Penal Code section 872 provides that a defendant shall be held to answer if "it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof." ▆ *Robison* v. *Superior Court*, 49 Cal.2d 186, 188 [316 P.2d 1] : "The evidence before a committing magistrate at a preliminary examination need not be such as would require a conviction.

The 'sufficient cause' required by section 872 means merely that there is a reasonable or probable cause for believing that defendant is guilty of the crime charged. 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the accused's guilt. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [2] [153 P.2d 344].)''

█ *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183-184 [281 P.2d 250] : ''An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]''

Respondent states that ''[i]t is incumbent upon the Appellant to show that the Superior Court Judge could have entertained a strong suspicion that there had been an unlawful attempt, coupled with a present ability to commit a violent injury on the person of another with the knife, (Sections 240 and 245 Penal Code).'' It is contended that there was no probable cause for a finding of the elements required by section 245 of the Penal Code. In this connection it is argued that all of the threats to kill the officers were made prior to their entry into the house, at which time there was a locked screen door between defendant and them; thus, ''at that time he lacked the present ability to commit violent injury on the person of the officers.'' Also, under respondent's version of the evidence, subsequent to the officers' entry ''the respondent retreated down first one hallway and then down another hallway and then attempted to retreat further into a closet'' and was there disarmed; that the asserted assault at this time ''was toward the person of *himself* and not upon the person of *another* within the meaning of Section 245 Penal Code.''

These contentions cannot be sustained. █ The rule defining the functions of the trial court when passing upon a motion under section 995 of the Penal Code is thus stated in *People* v. *Shaffer,* 182 Cal.App.2d 39, 42-43 [5 Cal.Rptr. 844] : ''On a motion to set aside an information, the court hearing such motion may not substitute its judgment as to the weight of the evidence for that of the magistrate conducting the preliminary hearing. [Citations.] █ Nor may the court judge the credibility of the witnesses who testified at the preliminary hearing. [Citations.] █ Under section 995 of the Penal Code, the information will be set aside only where there

is no evidence that a crime has been committed, or there is no evidence to connect the defendant with crime shown to have been committed. [Citations.]'' ▇ *People* v. *Jackson*, 146 Cal.App.2d 553, 556 [303 P.2d 767] : ''It is the record before the magistrate that is decisive. In arriving at his decision the magistrate may weigh the evidence, may resolve conflicts, and may give or withhold credence to witnesses. In testing the sufficiency of the showing made before him on motion to quash the superior court cannot do these things. [Citations.]'' See also *Perry* v. *Superior Court*, 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].

▇ Applying the foregoing rules, it is obvious that there was some evidence before the magistrate justifying the order holding defendant to answer. Defendant threatened to come out shooting; he repeatedly threatened to kill the officers; at about 2:25 he told them that they had to make up their minds, that he was going to get the gun in five minutes; in five minutes he left the front door. Upon entering the house the officers saw him running toward a closet and attempting to open the closet door; he had said he kept his guns in a closet. The acts of defendant at the closet door, as described by both officers, show an attempt to strike Officer Willick with the knife, the blade of which was pointed at the officer's chest, defendant's acts being averted only by his becoming disarmed.

Clearly this evidence spells an ''unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another'' (Pen. Code, § 240), and that such assault was with a deadly weapon (see *People* v. *McCoy*, 25 Cal.2d 177, 188 [153 P.2d 315] ; *People* v. *Kersey*, 154 Cal.App.2d 364, 366 [316 P.2d 52] ; *People* v. *Caberera*, 104 Cal.App. 414, 417 [286 P.2d 176] ; *People* v. *Urrutia*, 58 Cal.App.2d 468, 471 [137 P.2d 48] ).

No assault occurred at the front door, but the officers could reasonably believe that defendant, after the five-minute warning, had gone to get his guns and was preparing to ''come out shooting.'' These police officers had not only the right, but the duty, in their position of guardians of the peace and security of the community, to maintain law and order and prevent the commission of crime. Defendant was committing a misdemeanor in their presence (Pen. Code, § 417) and was threatening suicide. (Cf. *Christal* v. *Police Commission*, 33 Cal.App.2d 564, 567 [92 P.2d 416] ; *People* v. *Gonzales*, 182 Cal.App.2d 276, 279 [5 Cal.Rptr. 920] ; *People* v. *Ingle*, 53 Cal.

2d 407, 414 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Baca,* 184 Cal.App.2d 693, 698 [7 Cal.Rptr. 864].)

The fact that defendant's threats to kill the officers were conditioned upon their entering the house does not make his subsequent act something less than an assault. "It is true, threat was conditional, but the condition was present, and not future, and the compliance demanded was immediate. Where a party puts in a condition which must be at once performed, and which condition he has no right to impose, and his intent is immediately to enforce performance by violence, and he places himself in a position to do so, and proceeds as far as it is then necessary for him to go in order to carry out his intention, then it is as much an assault as if he had actually struck, or shot, at the other party, and missed him. It would, indeed, be a great defect in the law, if individuals could be held guiltless under such circumstances." (*People* v. *McMakin,* 8 Cal. 547, 548.) And as stated in *People* v. *McCoy, supra,* 25 Cal.2d 177, 192: "The fact that here the knife was exhibited in connection with a qualified threat would not preclude the appellant's conviction as charged." See also *People* v. *Pearson,* 150 Cal.App.2d 811, 820 [311 P.2d 142]; *People* v. *Thompson,* 93 Cal.App.2d 780, 782 [209 P.2d 819].

"It was not necessary in order to establish the commission of the crime that [respondent] should have actually cut his intended victim with the knife which he exhibited. (*People* v. *Piercy,* 16 Cal.App. 13 [116 P. 322], and cases therein cited.)" (*People* v. *Rader,* 24 Cal.App. 477, 484 [141 P. 958].) See also *People* v. *Ingram,* 91 Cal.App.2d 912, 914 [206 P.2d 36]; *People* v. *McCaffrey,* 118 Cal.App.2d 611, 618-619 [258 P.2d 557]; *People* v. *McMakin, supra,* 8 Cal. 547, 548; *People* v. *Yslas,* 27 Cal. 630, 634; *People* v. *Hawkins,* 127 Cal. 372, 375 [59 P. 697].

▮▮▮ Nor is specific intent, as suggested by respondent, an element of the crime of assault with a deadly weapon; it may be implied from the doing of the unlawful act, and the evidence in the instant case is sufficient to raise a presumption of an unlawful intent. (See *People* v. *Wells,* 145 Cal. 138, 140 [78 P. 470]; *People* v. *Ingram, supra,* 91 Cal.App.2d 912, 914; *People* v. *Laya,* 123 Cal.App.2d 7, 15 [266 P.2d 157].)

Albeit defendant's ultimate purpose may have been to get himself killed, whether by his own hand or by the officers, the magistrate was justified in concluding that defendant's acts constituted an unlawful attempt directed at Officer Willick.

There was reasonable and probable cause to hold defendant to answer.

The order is reversed.

Fox, P. J., and Herndon, J., concurred.