[Crim. No. 4074. First Dist., Div. One. Apr. 5, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ELDRIDGE JACKSON, Defendant and Appellant.

180

Eldridge Jackson, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant was convicted by a jury of murder in the second degree. The jury separately found defendant sane at the time of the commission of the offense. On motion for reduction of judgment under section 1181, subdivision 6, Penal Code, the court reduced the offense to manslaughter. Defendant appeals from the judgment of manslaughter.

## QUESTIONS PRESENTED

Defendant was represented in the trial court by the public defender. Defendant prosecutes this appeal in. propria persona contending only that the evidence is not sufficient to support the conviction of manslaughter.

## EVIDENCE

Defendant's specifications of claimed lack of evidence are very meager. The Attorney General, because of this situation, very fairly scrutinized the record and detailed the evidence. We, likewise, have carefully studied the transcript of the evidence and are well satisfied that the evidence amply supports the judgment and that the public defender ably represented the defendant.

The deceased, Willie Stevenson, about 8:30 in the morning, was sweeping the sidewalk in front of Pearl's Grill. Defendant had been up all night and had been "shooting pool and drinking, and coffee and stuff" at John Singer's. From there he went to Harvey's, a bar. Leaving there he saw Stevenson. Defendant started "hurrahin' " Stevenson, saying, " 'You ain't doin' nothin' but flunkying up and down the street.' " Stevenson objected to defendant "johnnyin' " him every

morning and stated that he would " '. . . wear the broom out on . . .' " defendant. Thereupon defendant ran into Stevenson and hit him. Stevenson fell on his face. Defendant then took Stevenson's head and bumped it on the shoulder part of the concrete paving. Defendant bumped Stevenson's head four or five times or more before Cruise, who came from across the street, was able to pull defendant off Stevenson. The latter's head was badly swollen.

Two witnesses testified that although Stevenson raised the broom in the air, he had not touched defendant with it when defendant knocked him down. Four witnesses testified to defendant bumping Stevenson's head on the pavement. Defendant testified that he and Stevenson had merely exchanged pleasantries, and then he asked for a taste from the bottle out of which he said Stevenson was nipping. He said Stevenson refused and instead struck him with the straw end of the broom. Defendant contended that this precipitated a fight and that he was merely defending himself. When questioned by the police defendant claimed that he did not remember the fight at all. At the trial he claimed to remember it clearly. At one point, though, he stated that he did not bump Stevenson's head against the concrete; at another point he stated that he did not remember doing so.

After Cruise pulled defendant off of him, Stevenson picked himself up and went about his daily business. That evening he was found in the Van Dyke barber shop on his hands and knees. About 10 o'clock he was taken to the hospital, where he died at about 4 o'clock the next morning.

Dr. Allen B. McNie, a qualified pathologist who performed an autopsy on Stevenson, testified that death was caused by a subdural hemorrhage due to trauma. The trauma could have been the physical force from the described beating Stevenson received, although it would also be consistent with any later blow. The doctor would expect that a subdural hemorrhage would not cause immediate death and in his opinion the trauma which caused Stevenson's death occurred approximately 18 to 48 hours prior to the time he performed the autopsy, which was approximately 20 hours after the encounter between Stevenson and defendant. Deceased was 49, defendant 31. Both were about the same weight. Several witnesses testified to deceased's sobriety at the time of the beating and up to the time of the death. The autopsy surgeon, however, found evidence of .10 to .15 grams per cent alcohol

in his blood. Defendant testified that he did not intend to kill Stevenson.

At the hearing on defendant's plea of not guilty by reason of insanity, the prosecution relied upon the presumption of sanity and the opinions of two psychiatrists that defendant was sane at the time of the killing. Another psychiatrist opined that defendant was insane at that time. A Veteran's Hospital electroencephalogram taken of defendant in 1954 showed a grossly abnormal pattern. However, one taken in conjunction with the later inquiry failed to reveal any abnormal pattern.

Manslaughter is defined in Penal Code section 192 as the "unlawful killing of a human being, without malice." The section also states that there are three kinds, voluntary, involuntary and while driving a vehicle. Obviously, the third type is not involved here. In reducing the offense of murder in the second degree the court was not required to designate which of the other two types applied, as long as the evidence would support a finding that one of those types existed. As said in *People* v. *Huntington* (1908) 8 Cal.App. 612, 616-617 [97 P. 760] : "If the killing was manslaughter, it is not important that it be classified. The statute does not distinguish the kinds of manslaughter in prescribing the punishment, but, on the contrary, makes the punishment not exceeding ten years' imprisonment for manslaughter; and the question as to whether any case falls under the one head or the other does not appear to be material. It is not necessary for us to pause in this case and reverse the judgment of conviction because we might not be able to classify the manslaughter as being voluntary or involuntary. The main question is whether or not the evidence shows the defendant to be guilty of manslaughter. The evidence is sufficient to justify the verdict that the deceased came to her death by the unlawful act of the defendant." Referring to McClain on Criminal Law, section 347, the court said: " 'The cases of manslaughter already discussed are those where the killing is intentional, but under such provocation as to indicate the absence of malice, and reduce the offense to manslaughter. But there are also cases of unintentional homicide amounting to manslaughter, just as there are cases of unintentional homicide amounting to murder, the difference being as to the magnitude of the wrong which was intended and from which death has resulted. Thus if a wrongful blow is given resulting in death, the act will not be less than manslaughter, even though

the blow was one in its nature not likely to cause death or otherwise shown to have been inflicted with intent to cause death. . . .' ''

 Manslaughter is comprised of two elements, (1) a killing, (2) in an unlawful manner. ██ ██ The evidence clearly shows that deceased died as the result of injuries received at the hands of defendant, and that in striking deceased defendant was acting in an unlawful manner. (See *People* v. *Chutuk* (1912) 18 Cal.App. 768, 770 [124 P. 566].) The physical punishment inflicted amounted to an assault and battery and consequently constituted the commission of an unlawful act not amounting to a felony. The evidence was such that the jury could have found (and evidently did find) that the beating was the proximate cause of death. (*People* v. *Cobler* (1934) 2 Cal.App.2d 375, 378-379 [37 P.2d 869].) Therefore the killing was involuntary manslaughter even in the absence of an intent to take life. (*People* v. *Miller* (1931) 114 Cal.App. 293, 301 [299 P. 742].)

Even assuming that, as testified by defendant (but denied by the other witnesses) that the deceased began the affray, the force used by defendant in striking deceased's head on the pavement far exceeded the amount necessary to defend himself. (See *People* v. *Zachary* (1913) 22 Cal.App. 475 [134 P. 1005]; *People* v. *Mullen* (1908) 7 Cal.App. 547, 549 [94 P. 867].)

 Defendant contends that there was a conflict in the testimony of two of the witnesses as to how long the fight had continued before defendant knocked deceased down, and therefore at least one of them did not see the incident. There actually was not such a conflict. However, if there were, it was a matter for the jury. Moreover, there was no conflict in the evidence concerning the obviously excessive beating deceased received after defendant knocked Stevenson to the ground and jumped on him.

 Again, whether the fact that the witnesses stated that deceased was sober while the doctor found considerable alcohol in his blood indicated that the witnesses could not be believed as to any of their testimony was also a matter for the jury. Further, the doctor stated that the deceased could have appeared sober to the casual observer.

Defendant claims that there was a difference in the testimony of one of the witnesses at the trial from that given at the preliminary examination. The record of the prelimi-

nary examination is not before the court. An examination of the transcript of the trial indicates that the public defender represented defendant well and vigorously. █ It is a reasonable assumption that were there grounds for impeachment of a witness because of his testimony at the preliminary examination, the attorney would have produced that testimony.

Judgment affirmed.

Tobriner, J., and Sullivan, J., concurred.