[Crim. No. 13845. Second Dist., Div. Five. June 11, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. FERNANDO ESCARCEGA, Defendant and Appellant.

856

Edward L. Lascher, under appointment by the Court of Appeal, Blanche C. Bersch, Carlos J. Garcia and Michael J. Hoppe for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—Defendant, along with two codefendants, was charged by information in count I with murder, a violation of Penal Code section 187, and in count II, with assault with a deadly weapon, a violation of Penal Code section 245. Defendant pleaded not guilty. After a jury trial, defendant was found guilty of "MANSLAUGHTER (Sec 192.3 PC), a felony, a lesser offense than that charged in count 1 of the amended information but necessarily included therein and ASSAULT

WITH A DEADLY WEAPON (Sec 245 PC), a felony, as charged in count 2." Count II (violation of Pen. Code, § 245) was related to an assault upon a person different than the person named as the deceased in count I. Defendant's motion for a new trial was denied. Probation was denied and defendant was sentenced to state prison for the term prescribed by law, the sentences to run concurrently. This appeal is from the judgment of conviction.

Only the fundamental facts are set forth. Defendant Escarcega, the two codefendants, and one Cuenca were members of a gang. The victims of counts I and II and their companions were members of a rival gang. The two gangs fought frequently. On October 15, 1966, defendant and Cuenca in defendant's car, and the two codefendants in another car, drove into the rival gang's neighborhood and parked across the street from a house where numerous members of the rival gang were congregated on the lawn. There was conflicting evidence as to why and in what manner the ensuing altercation between the two groups started, but when it was over, one Ochoa, a member of the rival gang, lay wounded with a bullet lodged in his abdomen. Ochoa subsequently died from this injury, and was the victim named in count I. A ballistics expert testified that the bullet which killed Ochoa did not come from a pistol. Two witnesses testified that they saw defendant with a rifle. Defendant and a member of the rival gang testified that it was Cuenca who had possession of the rifle and that defendant was armed with what appeared to be a crowbar or a pipe. This testimony was corroborated by the two codefendants. Cuenca was not apprehended until the conclusion of the trial. Defendant admitted that there was a rifle under the hood of his car. How or in what circumstance the rifle was fired at the time Ochoa lost his life is uncertain. Negligent handling of the gun or the commission of a misdemeanor[1] with death resulting therefrom is within a reasonable construction of the evidence. There was testimony by the victim named in count II that defendant fired the rifle at him.

■ Defendant's first contention is that his conviction of a violation of Penal Code section "192.3"[2] as a lesser included offense in the charge of murder is void since a violation of that section was neither charged nor proved and it is not a necessarily lesser included offense. Subdivision 3 of Penal

---

[1]Penal Code section 417 (drawing, exhibiting, or using a firearm or deadly weapon); Penal Code section 415 (disturbing the peace).

[2](Pen. Code, § 192, subd. 3.)

Code section 192 deals with vehicular manslaughter. Defendant is partially correct. He could not have been convicted of vehicular manslaughter. He was not so charged and the evidence clearly established that the victim died of a bullet wound. However, it is clear that the only problem presented is one of a clerical error in that the subdivision number of Penal Code section 192[3] was incorrectly designated. The jury was instructed on voluntary and involuntary manslaughter. It is evident that the court clerk gave the jury a verdict form with a wrong Penal Code subdivision inadvertently designated, and the jury, in returning that form, simply desired and intended to find defendant guilty of a manslaughter, which, under the circumstances here present, was a "lesser included offense." It is, of course, clear that more care should have been taken in the preparation of the forms of verdict so that a question such as is now presented would not arise. Counsel for defendant apparently understood what was intended by the verdict since no objection was then made to the form of the verdict. When read in the light of the record, it is clear what the jury intended in its determination. (See *People* v. *Butterfield*, 177 Cal.App.2d 553, 557 [2 Cal.Rptr. 569].) In giving effect to the manifest intention of the jury, the clerical error will be disregarded. (*People* v. *Reddick*, 176 Cal.App.2d 806, 821 [1 Cal.Rptr. 767].) The verdict ultimately returned can be understood only as evidencing the jury's determination to convict defendant of manslaughter. Necessarily, it was of a kind other than that which is committed in the driving of a motor vehicle. Under these circumstances, we may and should correct the verdict and judgment as entered by striking therefrom the incorrect subdivision reference. This does not accomplish a satisfactory determination of the case, however.

---

[3]Penal Code section 192: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:

"1. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

"3. In the driving of a vehicle—

(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act, which might produce death, in an unlawful manner, and with gross negligence.

(b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

". . . . . . . . . . . ."

Whether the record is such as would permit this court to designate which subdivision of section 192 was violated, or whether, under any circumstance, this court would have such authority, we need not decide. Error in instruction of the jury relative to manslaughter requires a reversal in the instant case.

■ The case as it relates to count I and the conviction of a lesser included offense therein is reversed because a necessary instruction defining misdemeanor was not given (*People* v. *Failla,* 64 Cal.2d 560, 564 [51 Cal.Rptr. 103, 414 P.2d 39]) and the jury was not advised as to which acts would amount to misdemeanors, though such an instruction was requested, albeit belatedly. At the close of the judge's delivery of the jury instructions, except as to the final instruction sending the jury to the jury room, the following colloquy took place:

"MR. WALTON [attorney for Escarcega]: Your Honor, I have a question on instructions.

"THE COURT: All right, what is it?

"MR. WALTON: May we approach the bench?

"THE COURT: Is there any necessity for that?

"MR. WALTON: Well, I think that the Court should read 417 of the Penal Code to the jury.

"THE COURT: Did you offer an instruction on that?

"MR. WALTON: No, I did not. And I want to assume responsibility for not having done that. This is the problem. The jury has been told that a manslaughter can be the unlawful killing of a human being during the commission of a misdemeanor. The jury has not been told what a misdemeanor is, either generally, or what specific misdemeanor might be involved.

"THE COURT: Your request will be denied." Thereupon the concluding instruction was given and the jury retired to deliberate.

The court instructed the jury that "manslaughter" was a lesser included offense necessarily included in a charge of "murder." (*People* v. *Jackson,* 202 Cal.App.2d 179 [20 Cal. Rptr. 592].) Within the instructions on manslaughter, the court stated: "There are two classes of involuntary manslaughter. Involuntary manslaughter is the unlawful killing of a human being without malice aforethought during the commission of a misdemeanor which is inherently dangerous to human life or safety; . . . ."

That the failure of the court to grant the request to instruct on a definition of misdemeanor was error is now without ques-

tion. Even in the absence of such request, the court should have so instructed *sua sponte*. "The judge may then charge the jury, and must do so on any points of law pertinent to the issue, if requested by either party; . . . ." (Pen. Code, § 1093, subd. 6.) ██ "It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] [Footnote omitted.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.] . . . . Furthermore, instructions on section 417 were necessary to a proper understanding of the instruction that the killing of a person without malice in the commission of an unlawful act not amounting to a felony is involuntary manslaughter. (Cf. *People v. Carmen, supra,* 36 Cal.2d 768, 776 [228 P.2d 281].) In the circumstances of the present case, it was error for the court to fail to instruct on its own motion on section 417." (*People v. Wilson,* 66 Cal.2d 749, 759-760 [59 Cal.Rptr. 156, 427 P.2d 820].)

In drafting instructions upon retrial, the attention of the trial court is directed to *People v. Wynn,* 257 Cal.App.2d 664, 675-676 [65 Cal.Rptr. 210] ; *People v. Alfreds,* 251 Cal.App.2d 666 [59 Cal.Rptr. 647] ; *People v. Bross,* 240 Cal.App.2d 157 [49 Cal.Rptr. 402].

The reversal of the judgment as to count I does not dispose of the other contentions raised by defendant. We therefore consider those additional contentions which are equally applicable to the judgment in count II, or are of such a nature that an adverse effect as to that judgment may have resulted.

██ Defendant urges that a reversal is required because of technical noncompliance with that part of Penal Code section 1127 which requires that ". . . . Upon each charge presented and given or refused, the court must endorse and sign its decision and a statement showing which party requested it. . . ."

The reporter's transcript and the clerk's transcript each contains the statement that the jury was instructed. The court declared it was *orally* instructing the jury, as distinct from the reading of prepared written instructions. This procedure is in compliance with Penal Code section 1127, and there is no merit to defendant's contention. (*People v. Mack,* 115 Cal. App. 588 [2 P.2d 209].)

██ Defendant next contends that he was prejudiced by his appearance in handcuffs at the outset of the trial. In the presence of the jury, defendant was brought into the courtroom handcuffed, and the restraints were removed immediately thereafter. In chambers, defendant moved for a mistrial, which was denied. The court then admonished the jury that the matter of security was not to be considered for any purpose. On similar facts, our Supreme Court in *People* v. *Ross,* 67 Cal.2d 64, 72 [60 Cal.Rptr. 254, 429 P.2d 606] recently held that such restraint, when reasonable for security purposes, does not deprive a defendant of a fair trial. (See also *People* v. *Burwell,* 44 Cal.2d 16 [279 P.2d 744] and *People* v. *Burnett,* 251 Cal.App.2d 651 [59 Cal.Rptr. 652].) In view of the nature of the charges against defendant and the authorities' awareness of his propensity for violence, we cannot say that such restraint was unnecessary or prejudicial within the meaning of Penal Code section 688.[4]

██ Defendant next contends that the prosecution was guilty of flagrant misconduct in cross-examining defendant, and in its opening and closing statements. Specifically, defendant urges that it was improper to question him about being brought into court handcuffed to a member of the rival gang who was also in custody and turned out to be a witness for defendant. However, no objection to this line of questioning was made by defendant, and it clearly appears that the prosecution asked such questions in an attempt to impeach the testimony of a previous defense witness. For this limited purpose, the questions were not improper since it appeared that the pevious witness might have been testifying falsely because of his fear of defendant.

██ Defendant also complains of a misstatement of fact in the prosecution's opening statement that the victim had been shot in the back. Defendant's motion for a mistrial on this ground was denied. It is difficult to perceive any prejudice to defendant since the state's doctor testified unequivocally that the victim was shot in the stomach, with the bullet lodging in the back. Opening statements are supposed to be an outline of what the prosecution intends to prove, and failure to do so does not necessarily indicate prejudice. (*People* v. *Granados,* 49 Cal.2d 490, 495 [319 P.2d 346].) Furthermore, the record

---

[4]Penal Code, section 688: "No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."

indicates that the trial court admonished the jury on the proper use and effect of the opening statement.

▇ Of greater significance, however, is defendant's claim that he was prejudiced by the closing argument of the deputy district attorney. A defense motion for a mistrial on this basis was denied. Among other remarks assigned as misconduct, defendant strongly urges that he was prejudiced by the deputy's statement that he "committed open perjury here on the stand." The vice of such comment is that it raises "the spectre of jury reliance on prosecutorial access to information outside the record. . . ." (*People* v. *Ellis*, 65 Cal.2d 529, 540 [55 Cal.Rptr. 385, 421 P.2d 393].) Since perjury is a felony, such comment may connote that the defendant has previously been convicted, or charges are pending against him for such crime. However, a single reference to a witness as having perjured himself, based on an analysis of the evidence before the jury, may be unobjectionable. (*People* v. *Ellis*, *supra*; *People* v. *Muir*, 244 Cal.App.2d 598, 601-602 [53 Cal.Rptr. 398].) In the present case, the comment was fairly based on the evidence. During cross-examination by the deputy district attorney in which he sought to pin defendant down as to the source of the rifle which was in his car, defendant answered very evasively. At this point, the trial judge asked the defendant whether he was telling the truth, to which the defendant unequivocally replied that he was not. Under these circumstances, we cannot say that the allusion to defendant's perjury was prejudicial misconduct.

▇ Defendant also complains of the prosecution's exhortation to the jury to make an example of defendant and his codefendants to younger boys in the area, and to reverse a purported trend in the direction of a "permissive society."

▇ Whether a prosecutor has been guilty of prejudicial misconduct must be. determined in the light of the particular factual situation involved. (*People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556].) ▇ An examination of the record reveals that there was substantial evidence of widespread and recurrent juvenile gang warfare in the area where the present offense took place. Under these circumstances and the fact that the prevelance of crime is a matter of common knowledge, we find no prejudice resulting from the prosecutor's remarks. (See *People* v. *Head*, 108 Cal.App.2d 734, 738 [239 P.2d 506] and *People* v. *Johnson*, 99 Cal.App.2d 717, 730 [222 P.2d 335].) ▇ It is permissible to comment on the serious and increasing menace of criminal conduct and the necessity of a strong sense of duty on the part of jurors. (Witkin,

Cal. Criminal Procedure (1963) Trial, § 454, p. 457.)
 The prosecution may properly urge his points vigorously
as long as he does not act unfairly. (*People* v. *Wein*, 50 Cal.2d
383, 396 [326 P.2d 457].)

 Defendant next contends that the trial judge was
biased against him and overly solicitous in his concern for the
prosecutor. This contention is wholly without merit. We have
carefully examined the record and are convinced that the iso-
lated remarks of which defendant now complains in no way
demonstrate bias or unfairness. (*People* v. *Wrigley*, 69 Cal.
2d 149, 163-165 [70 Cal.Rptr. 116, 443 P.2d 580].) In any
event, defendant did not assign any remark of the judge as
misconduct at the trial, and may not now urge the point on
appeal. (*People* v. *Amaya*, 40 Cal.2d 70, 78 [251 P.2d 324];
*People* v. *Ralls*, 21 Cal.App.2d 674, 679-680 [70 P.2d 265].)

 Defendant's next contention on this appeal is that
it was an abuse of discretion for the trial court to refuse to
permit him a continuance on his motion for new trial in order
to permit him to "develop evidence" from Cuenca, who had
been taken into custody between the end of trial and the time
for sentencing. The new evidence which defendant sought to
develop as a basis for his motion for new trial was a possible
confession by Cuenca that he was the one who wielded the
rifle which caused the homicide.

Notwithstanding the unlikelihood that such a confession
would develop, there was no showing before the trial judge
that defendant "could not with reasonable diligence have dis-
covered and produced" the "newly discovered" evidence at
the time of trial. (*People* v. *Williams*, 57 Cal.2d 263, 270 [18
Cal.Rptr. 729, 368 P.2d 353].) It is well settled that
one who relies upon the ground of newly discovered evidence
to sustain his motion for a new trial must have made a rea-
sonable effort to produce such evidence at trial. (*People* v.
*Owens*, 252 Cal.App.2d 548, 553 [60 Cal.Rptr. 687].)

 The record strongly indicates that defendant knew the
whereabouts of Cuenca during the trial. On cross-examination
by the deputy district attorney, defendant testified as follows:

"Q. Where does he [Cuenca] live?

"A. I don't want to jeopardize him.

"Q. Where does he live?

"A. I refuse to answer that question.

"THE COURT: You will answer the question.

"THE WITNESS: I don't know where he lives.

"[PROSECUTION]: "Well, what street was it on?

"A. I don't know what street it was on.

"The Court: You are telling us the truth now, aren't you?

"The Witness: No, sir.

"The Court: Tell us what street it was on.

"The Witness: I can't tell you what street it was on."

Furthermore, only the most informal statement was made by defense counsel in connection with the purported "newly discovered" evidence. His references to what he had learned were vague, inconclusive, and wholly unsupported by either affidavit or declaration, as required by statute. (Pen. Code, § 1181, subd. 8.) We find no abuse of discretion in the trial court's ruling.

We have examined the entire record, and we are persuaded that defendant was fairly and justly convicted as to count II.

The judgment is reversed as to count I and affirmed as to count II.

Aiso, J., concurred.

KAUS, P. J.—I concur in the result, but believe that there should be some elaboration on the court's reference to *People v. Wynn*, 257 Cal.App.2d 664 [65 Cal.Rptr. 210]; *People v. Alfreds*, 251 Cal.App.2d 666 [59 Cal.Rptr. 647]; and *People v. Bross*, 240 Cal.App.2d 157 [49 Cal.Rptr. 402].

In *People v. Huntington*, 8 Cal.App. 612, 616 [97 P. 760] it was said: ". . . If the killing was manslaughter, it is not important that it be classified. The statute does not distinguish the kinds of manslaughter in prescribing the punishment, but, on the contrary, makes the punishment not exceeding ten years' imprisonment for manslaughter; and the question as to whether any case falls under the one head or the other does not appear to be material. . . ."

In *People v. Jackson*, 202 Cal.App.2d 179, 182 [20 Cal.Rptr. 592]; *People v. Freudenberg*, 121 Cal.App.2d 564, 594 [263 P.2d 875]; and *People v. Bones*, 35 Cal.App. 429, 433-434 [170 P. 166], it was held unnecessary that a verdict or judgment specify whether a defendant was guilty of voluntary or involuntary manslaughter.

These holdings must be based on a theory that the definitions of voluntary and involuntary manslaughter in section 192 of the Penal Code merely describe the two ways in which the same crime can be committed. If voluntary and involuntary manslaughter are different crimes, it would logically fol-

low that all 12 jurors must agree which crime the defendant has committed and that they should so specify in their verdict.

In *People* v. *Bross, supra,* the two defendants were found guilty of voluntary manslaughter. On appeal they complained that the court had committed error in not instructing· on involuntary manslaughter. It was held that there was evidence of involuntary manslaughter and that the court should have instructed on that theory. The court found *People* v. *Jackson, supra,* to be inapplicable and added: ". . . And while we are discussing the subject of degrees of manslaughter, can it be said in this case that it is not material whether the case falls under one head or the other? Is it not reasonable to assume that the Adult Authority, in determining the punishment, would fix the term of imprisonment for a shorter term when the crime was involuntary manslaughter than it would if the conviction were for voluntary manslaughter?" (240 Cal.App.2d at p. 171.)

While I agree that it surely must be material to the Adult Authority whether a defendant has been convicted of voluntary or involuntary manslaughter, it is obvious that if the *Jackson-Freudenberg-Bones-Huntington* line of cases is correct, it may never find out from the judgment. Therefore I do not understand how the court was able to brush *Jackson* aside quite so easily.

Further if the pre-*Bross* cases are still valid, it is puzzling why a defendant who has been convicted of voluntary manslaughter has standing to complain that an instruction on involuntary manslaughter, justified by the evidence, should have been given. Without such an instruction his attorney was free to argue that the facts did not show an intentional homicide. With no instruction covering an unintentional killing, he could ask for an acquittal.

Since, however the *Bross* court recognized the defendants' standing to complain, I can only conclude that it did so on the unarticulated assumption that had an involuntary manslaughter instruction been given, the defendants would have been entitled to a further instruction that the jury must unanimously decide which of the two kinds of manslaughter they committed. This means, of course, that sections 192 subdivision 1 and 192 subdivision 2 of the Penal Code do not merely describe two ways of committing the same crime, but define two distinct felonies.

The same assumption must have been in the back of the

court's mind in *People* v. *Alfreds, supra,* 251 Cal.App.2d 666. There the defendant was convicted of voluntary manslaughter. No instruction on involuntary manslaughter was given. In a previous opinion the court had held that such an instruction should have been given *sua sponte* and that the failure to do so amounted to reversible error: "Furthermore, although voluntary and involuntary manslaughter carry identical penalties upon conviction (*People* v. *Doyle,* 162 Cal.App.2d 158 [328 P.2d 7]), there is an important distinguishing factor. A conviction of voluntary manslaughter makes defendant ineligible for probation, except in unusual cases, as she is a person who 'used a deadly weapon upon a human being in connection with the perpetration of the crime' (Pen. Code, § 1203). Thus, we hold that the court's failure to instruct on involuntary manslaughter, sua sponte, was prejudicial and constituted reversible error." (57 Cal.Rptr. 783, 786.) The court reversed. The Supreme Court granted a hearing and transferred the matter back to the Court of Appeal which then affirmed, but used similar language in the second opinion. (251 Cal.App.2d at p. 671.) The affirmance was based on invited error. (*People* v. *Phillips,* 64 Cal.2d 574, 581, fn. 4 [51 Cal.Rptr. 225, 414 P.2d 353].)

Finally, in *People* v. *Wynn, supra,* 257 Cal.App.2d 664 the defendant was also convicted of voluntary manslaughter. Trial had been to the court, rather than to a jury and therefore there was no question of instructions. On appeal Wynn claimed that he was entitled to a modification of the judgment to show a conviction of involuntary rather than voluntary manslaughter. The court brushed aside the Attorney General's reliance on *Jackson-Freudenberg-Bones-Huntington.* It mentioned that in *People* v. *Forbs,* 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825], the problem was noted but not decided. It referred to *Bross* and again pointed out that a defendant's eligibility for probation may depend on whether or not it was found that he used a loaded weapon with intent to kill or merely held it without due caution. It continued: "It is concluded from the latter cases that defendant is entitled to raise the question of the type of manslaughter of which he could properly be convicted. . . ." (257 Cal.App.2d at p. 676.) The judgment was, however, affirmed because the evidence supported the court's finding of voluntary manslaughter. (See also *People* v. *Pilgrim,* 73 Cal.App.2d 391, 398-399 [166 P.2d 636].)

If *Bross, Alfreds* and *Wynn* really do mean what they so

strongly imply, there was a much more basic error committed in the case at bar. The trial court defined voluntary and involuntary manslaughter but told the jury that it did not have to decide which kind the defendant committed, as long as they unanimously agreed it was manslaughter. If it was dealing with two different crimes this was a most fundamental error.

I entirely agree, however, that our reversal of the homicide count should be based on the court's failure to define any of the misdemeanors the commission of which could have served as a basis for an involuntary manslaughter verdict. The problem which I have discussed is a most fundamental one which undoubtedly will have to be decided by the Supreme Court sooner or later. It was not discussed by counsel in the briefs. We directed attention to it before the oral argument, but the presentation which followed was so inextricably interwoven with the defense's insistence that Escarcega had been erroneously convicted of vehicular manslaughter, that the issue was never really isolated. Additional authority may be available at the time of the retrial.[1] It is better that the next trial court be the first to rule.

Aiso, J., concurred.

Petitions for a rehearing were denied July 2, 1969, and the petitions of the appellant and of the respondent for a hearing by the Supreme Court were denied August 6, 1969.

---

[1]Indeed, it may be available now, but has not been found by us.