Filed 6/5/15  P. v. Martinez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E060548 |
| v. | (Super.Ct.No. RIF1205909) |
| MICHAEL MARTINEZ, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed with directions.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant Michael Martinez appeals from judgment entered following jury convictions for attempted murder (Pen. Code, §§ 664 and 187;[1] counts 1 and 2), robbery (§ 211; count 3), assault with a deadly weapon (§ 245, subd. (a)(1); counts 4 and 5)), making criminal threats (§ 422; counts 6), and dissuading a witness from testifying at trial (§ 136.1, subd. (a)(1); count 7). The jury also found true allegations that defendant inflicted great bodily injury (GBI) as to counts 1, 2, 4 and 5 (§ 12022.7), and used a deadly weapon as to counts 1 through 5 (§ 12022, subd. (b)). In addition, defendant stipulated he had two strike priors and two felony priors (§§ 667.5, subd. (b), 667, subds. (a), (c), (e)(2)(A), and 1170.12, subd. (c)(2)(A)). The trial court sentenced defendant to a determinate sentence of 18 years and a consecutive indeterminate sentence of 75 years to life.

Defendant contends there was insufficient evidence to support the jury's finding of premeditation and deliberation as to his convictions for attempted murder (counts 1 and 2). Defendant also contends there was insufficient evidence to support his count 7 conviction, incorrectly alleged as dissuading a witness from testifying at trial in violation of section 136.1, subdivision (a)(1). This contention arises from the prosecution's careless pleading of count 7, and both parties' and the court's inartful in not noticing and correcting the pleading error, which was carried over to the count 7 verdict. Because this

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

error was harmless, we reject both of defendant's contentions and affirm the judgment, as modified, to correct the clerical error in misdesignating the statute violated in count 7. The judgment and abstract of judgment should be corrected to show that defendant violated section 136.1, subdivision (b)(1), dissuading a witness from reporting a crime.

II

FACTS

On August 20, 2012, defendant was involved in two separate incidents occurring at an AM/PM store in Corona. The first incident occurred in the early morning, around 1:00 a.m. The second incident occurred the following evening on August 20, 2012, at approximately 11:00 p.m.

**The 1:00 a.m. Incident**

On August 20, 2012, at approximately 1:00 a.m., Jason Sewell, Cody Marisnick, and Katie Keyzers stopped at an AM/PM to get gas. Defendant approached the open window on the front passenger side of Sewell's vehicle. Marisnick was sitting in the front passenger's seat and Keyzers was sitting behind him. Defendant accused Sewell and Marisnick of giving him dirty looks. Sewell said they were not giving him dirty looks. Keyzers testified she heard Marisnick calmly say something like, "'It's not like that, but if you want it to be, we can handle [it].'" Defendant said okay and then charged toward Sewell's vehicle, reached into the car through the front passenger window, and punched and stabbed Marisnick about five times in the face and arm with a small Swiss Army knife.

3

When Keyzers slightly opened the back passenger door, defendant asked Keyzers if she wanted some of the action, too, and swung the door open. Defendant looked at Keyzers and then stepped back and shut the door. When Sewell attempted to leave the car, defendant said, "'You better get back in the car, homie. I'm going to jack your ride.'" Sewell drove away with Marisnick and Keyzers, and called 911 around 30 seconds later.

After Sewell, Marisnick, and Keyzers left, defendant entered the AM/PM store and stole some beer. Defendant exclaimed, "'I killed the son of a bitch.'" The store clerk, Mario Mendoza, asked defendant who he killed. Defendant replied, "Fuck you." Mendoza, who was unarmed, followed defendant outside and asked again who defendant had killed. Defendant laughed and stabbed Mendoza at least five times in the head and twice in the shoulder. The knife blade became embedded in Mendoza's head. After defendant left, a customer entered the store and called the police. Mendoza underwent neck surgery and hospitalization for his head injuries. About three months later, Mendoza suffered two cerebral hemorrhages or strokes, requiring him to walk with a cane thereafter. Mendoza identified defendant as the perpetrator when shown photographs at the hospital and identified defendant at trial.

Deputy Carlos Vasques responded to a dispatch call at approximately 1:17 a.m. on August 20, 2012. Vasques contacted Mendoza and took his statement. Vasques found defendant's knife behind the store counter. He also obtained the store surveillance video of the incident, which was played for the jury.

4

Defendant testified he had no recollection of going to the AM/PM store or the attacks on Marisnick and Mendoza, because before the incident, he had been drinking heavily at a party. During cross-examination, defendant claimed he attacked Marisnick in self-defense. He grabbed Marisnick's knife and stabbed him because Marisnick tried to stab defendant. Defendant said he also stabbed Mendoza because Mendoza came after him aggressively and was yelling at him. Defendant stated during cross-examination that he was regaining memory of the incident and he remembered he had tried to kill somebody by stabbing him.

**The 11:00 p.m. Incident**

Defendant returned to the AM/PM store that evening on August 20, 2012, at approximately 11:00 p.m. He was accompanied by his brother and a couple of other companions. Two of defendant's companions entered the store and stole beer from the store. The store clerk, Rafael Aguirre, told the two people to stop as they were leaving with the beer. They ignored Aguirre. Defendant entered the store and warned Aguirre to leave his friends alone and not to call 911. Defendant told Aguirre he and his companions were all from the same gang and threatened to kill Aguirre. The surveillance video recorded the following conversation at the store between defendant and Aguirre:

"MARTINEZ: Okay, look I just told you don't fuckin *** shut the fuck up mother fucker

"AGUIRRE: ***

"MARTINEZ: Hey, I'll go down there and fuck you up alright.

"AGUIRRE: You want to stay here too when the police coming

5

"MARTINEZ: *** fool."

Police Officers Ambriz and Dobson arrived at the scene and arrested defendant.

Defendant testified he told Aguirre, "[i]f you don't shut up, I'm going to hit you," because Aguirre was "talking crap" to him. Defendant said he threatened to "fuck him up" when Aguirre said he was calling the police to report that defendant's brother had stolen beer. Defendant admitted being on parole for assault with a deadly weapon, and having additional prior convictions for vandalism and for making criminal threats for the benefit of a criminal street gang. Defendant acknowledged he had been in a gang for 10 years and most of his tattoos were gang related. Defendant denied being in a gang at the time of trial. He also denied warning Aguirre he was in a gang or participating in a plot to steal beer.

III

SUFFICIENCY OF EVIDENCE OF PREMEDITATION AND DELIBERATION

Defendant contends there was insufficient evidence to support his convictions for attempted first degree murder of Marisnick and Mendoza (counts 1 and 2). He argues the prosecution did not present sufficient evidence of premeditation and deliberation.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient

6

substantial evidence to support [the conviction].' [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Murder is an unlawful killing committed with malice aforethought. (§ 187, subd. (a); *People v. Elmore* (2014) 59 Cal.4th 121, 132.) Murder is of the first degree when it is committed in a willful, deliberate and premeditated fashion. (§ 189; *Elmore,* at p. 133; *People v. Beltran* (2013) 56 Cal.4th 935, 942.) Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the killing. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1192; *People v. Ervine* (2009) 47 Cal.4th 745, 785.)

Premeditation and deliberation require more than a showing of intent to kill. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419; *People v. Concha* (2010) 182 Cal.App.4th 1072, 1083-1084.) An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection, rather than as the product of an unconsidered or rash impulse. (*People v. Burney* (2009) 47 Cal.4th 203, 235; *People v. Jurado* (2006) 38 Cal.4th 72, 118.) "Premeditated" means considered beforehand; "deliberate" refers to careful weighing of considerations in forming a course of action. (*Jurado,* at p. 118; *People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) "The process of premeditation and deliberation does not require any extended period of time." (*People v. Mayfield* (1997) 14 Cal.4th 668, 767; *People v. Solomon* (2010) 49 Cal.4th 792, 813.)

A reviewing court considers three types of evidence when determining whether a finding of premeditation and deliberation is adequately supported: planning activity by the defendant, motive, and the manner of killing. (*People v. Gonzalez* (2012) 54 Cal.4th

7

643, 663-664; *People v. Burney, supra,* 47 Cal.4th at p. 235; *People v. Romero* (2008) 44 Cal.4th 386, 401; *People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) These so-called "*Anderson* " factors are not the exclusive means to establish premeditation, and need not be present in any particular combination, or at all, to establish the evidence was sufficient. (*People v. Streeter* (2012) 54 Cal.4th 205, 242; *Gonzalez,* at p. 663; *Burney,* at p. 235.) "A first degree murder conviction will be upheld when there is extremely strong evidence of planning, or when there is evidence of motive with evidence of either planning or manner." (*Romero,* at p. 401.)

*A. Attempted Murder of Mendoza*

Defendant argues there was no evidence defendant planned the attack on the store clerk, Mendoza (count 1). He asserts there was no evidence defendant "was engaged in activity directed toward, and explicable as intended to result in" the attempted murder of Mendoza. (*People v. Anderson, supra,* 70 Cal.2d at pp. 26-27.) Defendant also argues there was no evidence of motive to kill, since defendant and Mendoza were complete strangers. In addition, the manner of the assault was not so particular and exacting to support a finding of premeditation and deliberation.

We conclude there was substantial evidence of motive, and the manner of the assault was sufficiently particular and exacting to support a finding of premeditation and deliberation. Defendant attacked Mendoza after Mendoza had just witnessed defendant stealing beer and persistently asked defendant who he had just attacked. It could be reasonably inferred defendant was angry at Mendoza for repeatedly asking for the name

8

of the person defendant had said he killed and wanted to avoid liability for the theft and the attack.

The manner of the attack, in which defendant repeatedly stabbed Mendoza five times in the head and shoulder, also supported a finding of premeditation and deliberation. (*People v. Hovey* (1988) 44 Cal.3d 543, 556 [repeated stabbings "'supports the inference of a calculated design to ensure death, rather than an unconsidered "explosion" of violence.'"].) Defendant's laughter, in response to Mendoza repeatedly asking defendant who he had killed, demonstrated that, when he stabbed Mendoza, leaving the knife blade embedded in Mendoza's head, defendant acted with cold, calculated judgment, rather than with unconsidered or rash impulse. Evidence of defendant's motive for the attack and the manner in which it was committed was sufficient to support defendant's conviction for attempted premeditated and deliberate murder of Mendoza.

## B. *Attempted Murder of Marisnick*

Defendant argues as to the stabbing incident involving Marisnick that there was no evidence of planning activities before defendant attacked Marisnick, or any evidence of motive for defendant's attempt to kill Marisnick. Defendant asserts he did not know Marisnick and had not encountered him before the attack. Defendant describes his encounter with Marisnick as a random encounter in which Marisnick happened to be in the wrong place at the wrong time and defendant became upset upon mistakenly believing Marisnick and Sewell were giving him dirty looks. Defendant also argues the

attack on Marisnick was sudden and in a burst of rage, rather than committed in a manner so particular and exacting, in accordance with a preconceived design.

We conclude the evidence was more than sufficient to support a finding that defendant acted with premeditation and deliberation when he assaulted and stabbed Marisnick. Evidence of defendant's motive to kill Marisnick includes testimony that, before assaulting Marisnick, defendant accused him of giving defendant dirty looks, and, according to Keyzers, Marisnick responded, "it's not like that, but if you want it to be, we can handle [it]." Defendant could have walked away but, instead, said "okay" and then charged toward Sewell's vehicle, reaching into the car through the front passenger window, and punching and stabbing Marisnick four or five times in the face and arm with a small Swiss Army knife.

Defendant's conduct reflects that he felt disrespected by Marisnick not submitting to defendant's confrontational acts and was motivated to establish his dominance over Marisnick by attacking him. His acts of attacking Marisnick, who was sitting inside the car unarmed, and thereafter threatening to attack Keyzers and threatening Sewell with carjacking Sewell's car, show that during the incident involving Marisnick, defendant acted deliberately, with cold, calculated judgment, rather than with unconsidered or rash impulse. This is further apparent from defendant's conduct after Sewell, Marisnick, and Keyzers left, and defendant entered the AM/PM store, exclaiming to Mendoza, "I killed the son of a bitch." Defendant showed pride in committing a cold-hearted attack on Marisnick.

10

In addition, as with defendant's multiple stabbings of Mendoza, the manner of defendant's attack of Marisnick, in which defendant repeatedly stabbed him in the head four or five times, also supports a finding of premeditation and deliberation. (*People v. Hovey, supra,* 44 Cal.3d at p. 556.) The repeated stabbings support an "'inference of a calculated design to ensure death, rather than an unconsidered "explosion" of violence.'" (*Ibid.*) Although little time elapsed between when defendant first encountered Marisnick and defendant attacked him, the process of premeditation and deliberation can occur within a brief period of time. "'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' [Citations.]" (*People v. Mayfield, supra,* 14 Cal.4th at p. 767; *People v. Solomon, supra,* 49 Cal.4th at p. 813.) Substantial evidence supports a finding that this occurred in the instant case. Before attacking Marisnick, defendant reflected on Marisnick's acts, which defendant construed as challenging him by looks. We therefore conclude the evidence of motive and the manner in which defendant attacked and repeatedly stabbed Marisnick was sufficient to support the jury's finding defendant committed attempted premeditated and deliberate murder.

IV

SUFFICIENCY OF EVIDENCE OF COUNT 7 CONVICTION

Defendant contends there was insufficient evidence to support his count 7 conviction for dissuading a witness from giving testimony in a trial (§ 136.1, subd.

11

(a)(1)).[2] Defendant asserts his conviction should be reversed because his conduct did not fall within the statute charged in count 7.

A. *Factual and Procedural Background*

Count 7 of the second amended felony complaint (complaint) and information allege that defendant violated section 136.1(a)(1) by "wilfully, unlawfully, knowingly and maliciously prevent[ing] and dissuad[ing] a witness, to wit, RAFAEL AGUIRRE, from attending and giving testimony at a trial, proceeding and inquiry authorized by law."

During the trial, defendant testified he threatened Aguirre when defendant became aware Aguirre was calling the police and reporting the beer theft. Defendant also testified that after his friends stole beer, he told Aguirre, "If you don't shut up, I'm going to hit you." The surveillance video of the incident shows that right after the beer theft, Aguirre and his coworkers discussed calling 911. Aguirre testified that defendant kept telling Aguirre to leave him alone and that his companions, who stole the beer, were his friends and they were all from the same gang. Defendant told Aguirre that defendant could come around the back and kill Aguirre. At the time of that threat, Aguirre's coworker was in the process of calling 911.

The prosecution argued during closing argument regarding count 7: "And witness intimidation. . . . [D]efendant tried to prevent or discourage Aguirre from reporting that he was a victim to a crime. And remember, Mr. Aguirre said, we had a conversation with

---

[2] For ease of reference, we refer to section 136.1, subdivision (a)(1), as "136.1(a)(1)" and refer to section 136.1, subdivision (b)(1), as "136.1(b)(1)."

12

my colleague about calling the police. The defendant was in the immediate vicinity. You could see Mr. Aguirre hand the phone over. And Mr. Aguirre says that's when the defendant said, leave them alone. [¶] Mr. Aguirre, what did you understand that to mean? He said, those guys that just took the beer, the guys that were with him, leave them alone, or I'm going to come and fuck you up. I mean, that's kind of the summary of what was said. Does it matter that he wasn't successful? Doesn't matter that Mr. Aguirre stood his ground and did call and came in here and did testify as a witness. It just matters that the defendant did and said those things."

Defense counsel described count 7 during closing argument as an "intimidating a witness" charge. Defense counsel told the jury that in order to convict defendant of the count 7 charge, the jury needed "to show that [defendant] was trying to prevent Mr. Aguirre from reporting a crime."

The court instructed the jury on count 7 at follows: "The defendant is charged in Count 7 with intimidating a witness, in violation of Penal Code Section 136.1. To prove that the defendant is guilty of this crime, the People must prove that: [¶] One, the defendant tried to prevent or discourage Rafael Aguirre from making a report that he was a victim of a crime to law enforcement. A person is a victim if there is an – if there is reason to believe that a federal or state crime is being or has been committed or attempted against him or her. It is not a defense that the defendant was not successful in preventing or discouraging the victim. It is not a defense that no one was actually, physically injured or otherwise intimidated."

13

The jury entered a verdict stating that the jury found defendant "**guilty** of a violation of section 136.1, subdivision (a), subsection (1), of the Penal Code, PREVENT/DISSUADE RAFAEL AGUIRRE FROM TESTIMONY, as charged under count 7 of the information."

B. *Applicable Statutes*

Section 136.1 enumerates various crimes involving witness and victim intimidation. Subdivision (a)(1) of section 136.1, which is the subdivision cited in the complaint and information, concerns dissuading a witness or victim from testifying ("dissuading testifying"). Subdivision (a)(1) states in relevant part: "(a) [A]ny person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."

Subdivision (b)(1) of section 136.1, which describes the crime of attempting to prevent or dissuade a witness or victim from reporting a crime ("dissuading reporting a crime"), provides: "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge." This is the crime actually prosecuted in this case.

14

*C. Discussion*

Defendant argues there was no evidence that Aguirre was dissuaded or prevented from testifying at trial in violation of the charged crime of violating section 136.1(a)(1). Defendant further argues section 136.1(a)(2) and section 136.1(b)(1) are more applicable to the evidence but violations of those statutes were not charged and therefore defendant's count 7 conviction must be reversed.

The People acknowledge that the complaint and information mistakenly charged defendant in count 7 with dissuading testifying, in violation of section 136.1(a)(1), instead of alleging the actual crime of dissuading reporting a crime in violation of section 136.1(b)(1). The People argue that, nevertheless, because defendant was on notice the prosecution intended to charge defendant with dissuading reporting a crime and the jury was properly instructed on the intended charge, defendant was not prejudiced by the charging error.

"Due process of law requires that an accused be advised of the charges against him; accordingly, a court lacks jurisdiction to convict a defendant of an offense that is neither charged in the accusatory pleading nor necessarily included in the crime alleged. [Citation.]" (*In re Fernando C.* (2014) 227 Cal.App.4th 499, 502-503.) Defendant contends he cannot be convicted of violating section 136.1(b)(1), dissuading reporting a crime, because he was neither charged with the crime nor was the crime a lesser included offense of the charged crime. There was also no evidence defendant prevented or dissuaded any witness or victim from attending the trial or testifying. Although there was evidence defendant attempted to dissuade Aguirre from reporting the beer theft crime in

violation of section 136.1(b)(1), that crime was not alleged in the complaint or information. Defendant argues that, therefore, under *Fernando C.*, defendant could not be convicted of the crime, unless the section 136.1(b)(1) crime is a lesser included offense of the charged crime, the section 136.1(a)(1) crime.

The section 136.1(b)(1) crime is not a lesser included offense of the section 136.1(a)(1) crime. "Two tests are used to determine whether an offense is necessarily included within another: the 'elements' test and the 'accusatory pleading' test. (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) The elements test asks whether all the statutory elements of the lesser offense are included in the elements of the greater offense. (*Ibid.*) 'Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' (*Ibid.*) Under the accusatory pleading test, a lesser offense is included within a greater ""'if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.' [Citation.]"' [Citation.]" (*In re Fernando C., supra,* 227 Cal.App.4th at p. 503.)

In the instant case, all of the elements of the section 136.1(b)(1) crime are not included in the section 136.1(a)(1) crime. A conviction under section 136.1(b)(1) requires proof the defendant knowingly and maliciously prevented or dissuaded a witness or victim from attending or giving testimony at trial. Those elements are not included in the section 136.1(a)(1) crime, which requires proof the defendant attempted to prevent or dissuade a crime victim or witness to the crime from making any report of that victimization to any peace officer or law enforcement officer or probation or parole or

16

correctional officer or prosecuting agency or to any judge. The charged crime concerns dissuading a witness from testifying. The crime the People argue defendant was actually convicted of involved dissuading a witness from reporting a crime. These two crimes both involve dissuading a witness or victim but are different crimes. The instant case does not involve convicting defendant of a more specific crime than a more general statute alleged in the complaint. It involves designating the wrong subdivision of section 136.1 and describing the wrong crime.

This charging error raises the issue of whether defendant's due process right to notice of the charges against him was violated. (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 999.) The due process right that, one accused of a crime must be informed of the nature and cause of the accusation, "is satisfied when the accused is advised of the charges against him so that he has a reasonable opportunity to prepare and present a defense and is not taken by surprise by the evidence offered at trial." (*Ibid.*) "[T]he right to defend has two related components, namely, the right to *notice* of the charges, and the right to *present a defense* to those charges." (*People v. Jones* (1990) 51 Cal.3d 294, 317.)

Defendant's reliance on *People v. Mancebo* (2002) 27 Cal.4th 735 for the proposition the trial court could not substitute an unpleaded crime for another pleaded crime, is misplaced. *Mancebo* is distinguishable in that the court's holding turned on the court finding noncompliance with the express pleading and proof requirements of section 667.61. In *Mancebo*, the court imposed two section 12022.5, subdivision (a), gun-use enhancements, in the belief it could substitute an unalleged multiple victim circumstance

17

(§ 667.61, subd. (e)(5)) for the expressly pleaded gun-use circumstances in order to satisfy the "minimum number of circumstances" requirement for One Strike sentencing (§ 667.61, subd. (f)).

Although the prosecution failed in *People v. Mancebo, supra,* 27 Cal.4th 735, to allege in the information a multiple victim circumstance pursuant to section 667.61, subdivision (e)(5), the trial court relied on the multiple victim circumstance during sentencing. The court concluded it was supported by other crime allegations and evidence the crimes were committed against multiple victims. On appeal, the appellant objected to reliance on the multiple victim circumstance. The respondent argued the trial court could rely on the multiple victims circumstance, even though it was not alleged in the information.

The *Mancebo* court affirmed the Court of Appeal holding striking the section 12022.5, subdivision (a), gun-use enhancements on the ground relying on the multiple victim circumstance violated the pleading and proof provisions of section 667.61 and the defendant's due process right to fair notice. There was no notice the People intended to invoke the multiple victim circumstance to support One Strike sentencing, so that gun use would become available as a basis for imposing additional section 12022.5, subdivision (a), enhancements. (*People v. Mancebo, supra,* 27 Cal.4th at p. 739.) The *Mancebo* court held the error was not harmless because the multiple victim circumstance had never been pled and therefore could not be substituted in, in hindsight, as a basis for the One Strike terms. (*Id.* at pp. 739, 754.)

*Mancebo* is inapposite. It concerns sentencing error arising from not alleging a circumstance necessary for imposition of a sentencing enhancement under section 667.61, which expressly mandates the facts of the sentencing circumstance must be alleged in the information. The instant case concerns failure due to clerical error to plead the correct crime; it does not concern the failure to allege a sentencing allegation relied upon for purposes of imposing an enhancement under section 667.61. Here, the felony complaint and information allegations were incorrect, but the record shows the trial court and counsel understood the charge to be a different crime than that alleged. In addition, the trial court provided proper jury instructions for the crime prosecuted, and both counsel's closing arguments related to the unalleged crime, showing defendant had notice of the actual crime prosecuted.

Under California's liberal pleading rules, a felony complaint is sufficient "'if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language . . . sufficient to give the accused notice of the offense of which he is accused.' (Pen. Code, § 952.) There is 'no requirement that the statute which the accused is charged with violating be designated by number, and even a reference to the wrong statute has been viewed of no consequence . . . .' [Citation.] A mistake in designating the statute on which a charge is based or in naming an offense is '"immaterial unless the defendant is misled thereby . . . ."' [Citation.] Consistent with this authority, we may not conclude that a complaint is insufficient, or set aside a guilty plea or sentence unless we first determine that a 'defect or imperfection in matter of form' has 'prejudice[d] a substantial

right of the defendant upon the merits.' (Pen. Code, § 960.)" (*People v. Ramirez, supra,* 109 Cal.App.4th at p. 999.)

Here, the complaint alleges in count 7 a different crime than the crime the People prosecuted against defendant. The incorrect allegations in the complaint and information do not require reversal because the erroneous allegations in count 7 did not prejudice defendant's substantial right to notice of the actual crime prosecuted against him or impede his ability to defend against the crime. The prosecution argues defendant was on notice he was charged in count 7 with attempting to dissuade Aguirre from reporting a crime. The prosecution reasons that defendant could not have reasonably believed he was being charged with the crime of dissuading Aguirre from testifying because defendant committed the offense at the AM/PM store before the trial had commenced, and Aguirre testified at trial. The prosecution further argues that it was clear from the preliminary hearing transcript that defendant understood he was being prosecuted for attempting to dissuade Aguirre from reporting a crime. (*People v. Jones, supra,* 51 Cal.3d at p. 317.)

Our high court noted in *Jones* that "'[i]t is clear that in modern criminal prosecutions initiated by informations, the transcript of the preliminary hearing, not the accusatory pleading, affords defendant practical notice of the criminal acts against which he must defend.'" (*Jones, supra,* 51 Cal.3d at p. 318.) Even though the information in the instant case erroneously alleged the crime in count 7 as dissuading testifying, Deputy Vargas testified during the preliminary hearing that defendant told Aguirre not to call the police and report that his friends had just stolen beer, because defendant's friends "were

20

his homies, and if [Aguirre] called, [defendant] was going to kill him." There was no testimony during the preliminary hearing that defendant dissuaded anyone from testifying at trial or any other court proceeding. Following the preliminary hearing testimony, the trial court found there was sufficient evidence to support the count 7 charge.

In addition to the preliminary hearing transcript showing evidence defendant committed the crime of dissuading reporting a crime, the jury instructions regarding count 7, the evidence presented at trial, and both counsels' closing arguments demonstrate that the parties, counsel, and the trial court all knew defendant was being prosecuted in count 7 for the crime of dissuading reporting a crime, not the crime of dissuading testifying. Defendant had the opportunity to defend against the crime, and did so. Defendant therefore did not suffer any prejudice to his right to notice of the actual offense prosecuted in count 7 or to his right to present a defense, as a result of the erroneous description of the count 7 crime in the complaint, information, and jury verdict. In addition, there was no likelihood of prejudicial sentencing error in the event the court relied on section 136.1(a)(1), instead of section 136.1(b)(1), because sentencing is the same for both offenses (§ 136.1, subds. (a) & (b)).

With regard to the misstatement of the crime and applicable statutory subdivision in the verdict form for count 7, *People v. Escarcega* (1969) 273 Cal.App.2d 853, 858, supports the proposition the clerical error is immaterial. In *Escarcega*, the defendant was convicted of manslaughter, as a lesser included offense of murder (count 1). The crime arose from a gang fight between rival gangs. The defendant committed manslaughter when he shot a rival gang member in the abdomen. (*Id.* at p. 857.) The defendant argued

21

on appeal that his manslaughter conviction was void because he was incorrectly convicted of violating former subdivision 3 of section 192 (now codified as § 192, subd. (c)), which concerns vehicular manslaughter. The court in *Escarcega* acknowledged the defendant was not charged with vehicular manslaughter and could not have been convicted of the crime because the evidence showed he died of a bullet wound.

The court in *Escarcega* concluded it was clear that the cited code section cited in the verdict was clerical error, particularly since the jury instructions referred to the correct crime of manslaughter. The *Escarcega* court explained: "[I]t is clear that the only problem presented is one of a clerical error in that the subdivision number of Penal Code section 192[] was incorrectly designated. The jury was instructed on voluntary and involuntary manslaughter. It is evident that the court clerk gave the jury a verdict form with a wrong Penal Code subdivision inadvertently designated, and the jury, in returning that form, simply desired and intended to find defendant guilty of a manslaughter, which, under the circumstances here present, was a 'lesser included offense.' *It is, of course, clear that more care should have been taken in the preparation of the forms of verdict* so that a question such as is now presented would not arise. Counsel for defendant apparently understood what was intended by the verdict since no objection was then made to the form of the verdict. When read in the light of the record, it is clear what the jury intended in its determination. [Citation.] In giving effect to the manifest intention of the jury, the clerical error will be disregarded. [Citation.] The verdict ultimately returned can be understood only as evidencing the jury's determination to convict defendant of manslaughter. Necessarily, it was of a kind other than that which is committed in the

22

driving of a motor vehicle. Under these circumstances, we may and should correct the verdict and judgment as entered by striking therefrom the incorrect subdivision reference." (*People v. Escarcega, supra,* 273 Cal.App.2d at p. 858, italics added.)

Likewise, in the instant case the record shows that the verdict was incorrect due to clerical error. It referred to the correct code section number, 136.1 regarding dissuading a witness or victim, but designated the incorrect subdivision, (a)(1), instead of (b)(1), along with describing the subdivision (a)(1) crime, instead of the subdivision (b)(1) crime. In the instant case, the same clerical error occurred in the information and, most likely, was carried over to the verdict form. As in *Escarcega*, the trial court instructed the jury on the correct crime,[3] there was no objection to the instructions or verdict for count 7, both counsels' closing arguments concerned the actual crime prosecuted, and the evidence demonstrated that the crime of dissuading reporting a crime was the crime being prosecuted against defendant. There was no evidence presented or argument relating to commission of the subdivision (a)(1) offense of dissuading testifying. Defendant did not demur or otherwise object to any asserted lack of notice. He therefore forfeited the issue on appeal. (*People v. Ramirez, supra,* 109 Cal.App.4th at p. 997; *People v. Bright* (1996) 12 Cal.4th 652, 671 ["where defendant failed to object at trial to the adequacy of the notice he received any such objection is deemed waived;" *People v. Howington* (1991) 233 Cal.App.3d 1052, 1058.)

---

[3] The court in *Escarcega* reversed the conviction, however, on another ground: The trial court did not properly instruct the jury relative to manslaughter. (*People v. Escarcega, supra,* 273 Cal.App.2d at p. 859.)

23

When read in the light of the entire record, it is clear what the jury intended in its count 7 verdict. In giving effect to the manifest intention of the jury, the clerical error will be disregarded. The verdict ultimately returned can be understood only as evidencing the jury's intent to convict defendant of attempting to dissuade a witness from reporting a crime in violation of section 136.1, subdivision (b)(1). (*People v. Escarcega, supra,* 273 Cal.App.2d at p. 858.) The judgment, as reflected in the trial court minute orders entered on November 4, 2013, and January 10, 2014, therefore must be modified as to count 7, to reflect that defendant was found guilty of violating subdivision (b)(1) of section 136.1, instead of section 136.1, subdivision (a)(1).

V

DISPOSITION

The language in the information and verdict form for count 7 erroneously describes the count 7 crime actually prosecuted. The crime should have been described in the information and verdict as attempting to dissuade a witness or victim from reporting a crime, in violation of subdivision (b)(1) of section 136.1. The trial court is therefore ordered to strike the incorrect crime statute, section 136.1, subdivision (a)(1), from the judgment, and substitute in the correct statute, section 136.1, subdivision (b)(1).

The judgment is affirmed as modified. The trial court is further ordered to issue a modified abstract of judgment showing defendant was convicted in count 7 of violating section 136.1, subdivision (b)(1), *not* section 136.1, subdivision *(a)(1)*. The trial court

24

is directed to forward a certified copy of the modified abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>

J.

We concur:

<u>RAMIREZ</u>

P. J.

<u>HOLLENHORST</u>

J.